**Willie COLLINS et al., Petitioners,**

v.

**A. B. HAGA, Superintendent, Correctional
Field Unit #28, et al., Respondents.**

**Civ. A. No. 74–C–5–D.**

United States District Court,
W. D. Virginia,
Danville Division.

March 18, 1974.

See also, D.C., 373 F.Supp. 918, 920.

James W. Hopper, Asst. Atty. Gen., Richmond, Va., for respondents.

Petitioners appear pro se.

## OPINION and JUDGMENT

DALTON, District Judge.

This proceeding involves a civil action against several of the correctional officers of the Patrick-Henry Correctional Unit, filed *pro se* by various inmates of the Unit pursuant to the Civil Rights Act, 42 U.S.C. § 1983. The inmates' petition contains numerous complaints concerning the conditions of their confinement, and requests that the court enjoin the respondents from continuing the practices which have allegedly created these conditions. The petition suffers from an infirmity frequently present in *pro se* complaints, in that it contains many conclusory allegations lacking in factual verification. Although this Circuit adheres to a policy favoring liberal construction of *pro se* petitions, nevertheless, in order to state a claim for relief under § 1983 "there must be alleged *facts* (1) constituting a deprivation of a right guaranteed by the 14th Amendment (2) under color of state authority." Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1963) (emphasis supplied). Absent a minimum factual presentation, a federal court does not have the authority to conduct a general inquiry into the operation of a state prison system, but rather should summarily dismiss the complaint. This is especially appropriate when the prison authorities have filed affidavits based on their personal knowledge and the petitioners have failed to respond by setting forth specific facts showing that there is a genuine issue for trial. *See* Antonio v. Barnes, 464 F.2d 584 (4th Cir. 1972); Fed.R.Civ.P. 56(e). With this in mind, the court will examine the individual allegations contained in the complaint.

Initially petitioners allege that on several occasions they have been threatened with retaliation if they pursue relief through the courts. Specifically, they contend that respondents have threatened to transfer complaining inmates to correctional units further from their homes and to remove all inmate telephone privileges. Furthermore, they allege the respondents are interfering with their right to petition for judicial relief by attempting to mobilize the general inmate population against any in-

mate seeking relief through the courts and by refusing to send legal material by certified mail unless the inmate pays the cost. In his affidavit, A. B. Haga, Superintendent of the Unit, denies that he or any employee of the Unit have impeded any inmate in his efforts to petition for judicial relief. Further, he states that transfers are not within his discretion, but instead must be recommended to the Institutional Classification Committee where the inmate is afforded a hearing. If the ICC approves transfer, the approval is forwarded to the Division Classification Committee for confirmation, and from there to the Central Classification Committee. Thus, the affiant asserts that he has no authority to arbitrarily transfer an inmate. The Superintendent's affidavit also indicates that a pay telephone is available for inmate use two times monthly between 5:00 p. m. and 8:00 p. m., and that no inmate may be denied telephone privileges except pursuant to a determination by the Institutional Adjustment Committee after a hearing. He denies any attempt to create animosity among inmates and avers that every effort is made to create and maintain a harmonious atmosphere. The Superintendent also indicates that inmate legal material is mailed without cost to the inmate, however, certified, registered or insured mail is posted at the expense of the inmate according to the Division of Corrections' policy.

Additionally, petitioners assert that indigent inmates have been denied the right to appointment of legal counsel and that all inmates have been denied access to legal material because there are no law books in the Unit library and none are available upon request. Superintendent Haga, in his affidavit, replies that two attorneys have been appointed by the Henry County Circuit Court to administer to the legal needs of the inmates and are available every Wednesday evening. He admits that the institution's library, which is supplied by the Division of Corrections and interested citizen groups, does not contain a legal reference book section.

The complaints listed above pertain to the petitioners' constitutionally protected right of access to the courts. Examining the last allegation first, it concerns this general catagory, rather than any absolute right to legal materials. The state is not required to provide a law library in order to ensure that the right to petition for judicial relief is adequately protected. Gilmore v. Lynch, 319 F.Supp. 105 (D.C.Cal.1970), aff'd sub nom., Younger v. Gilmore, 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971). Alternative means may be sufficient. The respondents' affidavit discloses that two attorneys are available to assist the inmates and this certainly satisfies the state's obligation. See Lee v. Stynchcombe, 347 F.Supp. 1076 (N.D. Ga.1972). Regarding the remainder of petitioners' allegations pertaining to their access to the courts, the court finds that based on the Superintendent's affidavit and the failure of petitioners to relate specific incidents wherein their rights were denied, or any specific damage or prejudice resulting therefrom, no constitutional deprivation has occurred.

Next, petitioners allege they have been verbally harassed and subjected to profane language by respondents. Even if this allegation had been factually supported, it would not, without more, constitute a constitutional violation. Fisher v. Woodson, 373 F.Supp. 970 (E.D.Va. July 5, 1973); Shelton v. Cunningham, C.A. 489–72–R (E.D.Va. Nov. 10, 1972).

Petitioners also contend that respondents refuse to honor the Division of Corrections' Guidelines pertaining to hair styles, sideburns and beards by requiring inmates to be clean shaven with short hair and sideburns. Superintendent Haga states that Division Guidelines prohibit beards and that Unit regulations forbid hair styles that appear unsanitary and impair identification of inmates. Prison authorities are vested with broad discretion in promulgating

rules necessary for orderly prison administration. The complained of regulations were established for ·health and identification purposes. Hence, they are directed to the achievement of valid objectives and any resulting restriction of inmates' personal preferences is justified. Howard v. Warden, Petersburg Reformatory, 348 F.Supp. 1204 (E.D. Va.1972).

Additionally, petitioners complain of their living conditions, asserting that the Unit is roach and pest infected, that much of the plumbing needs repair and that respondents keep the heat turned off although petitioners and other inmates complain of the cold. The Superintendent denies these allegations and states that until December 31, 1973 the Unit was policed by an independent pest control company. This contract expired in 1973, and the Unit now has its own spraying equipment. Furthermore, an Assistant Superintendent is presently attending a school for pest control training and weekly inspections of the kitchen and dining areas are made by a registered nurse. The inmates' living quarters are regularly inspected and are cleaned and mopped with disinfectant daily. The Unit is centrally heated by a circulating hot water system and the thermostat is maintained at 70 degrees during the day and 68 degrees at night.

■ Although the presence of vermin or other unsanitary and unhealthy conditions may be grounds for judicial intervention, no injunctive relief is mandated by the facts presented. The evidence discloses that reasonable efforts are regularly made by the officials of the Unit to maintain adequate sanitation, and there is no indication that any inmate has become ill by reason of the conditions. The circumstances at Patrick-Henry, therefore, do not suggest unsanitary conditions which infringe the constitutional rights of the inmates detained therein. *See* McLaughlin v. Royster, 346 F.Supp. 297, 311 (E.D.Va. 1972).

■ Next, petitioners protest that they have been denied adequate medical care and have been required to work while ill. According to the Superintendent's affidavit, a registered nurse is available from 5:00 p. m. to 8:00 p. m. five days a week and upon her recommendation inmates needing further medical care are treated by a local physician. In addition, emergency care is available at Martinsville Memorial Hospital. Once again, petitioners' allegation is wholly inadequate for it is merely a conclusory statement that they have not received proper medical treatment. "In the absence of factual allegations of obvious neglect or intentional mistreatment," courts should rely on the reports of prison officials that reasonable medical care is being provided. Cates v. Ciccone, 422 F.2d 926, 928 (8th Cir. 1970).

■ Furthermore, petitioners object that the only recreation available at the Unit is television. Superintendent Haga responds that weightlifting, boxing, outdoor ball games in organized leagues, hobby crafts, library facilities, indoor games, classrooms, individual and group study, and musical groups are provided for the inmates. Petitioners having failed to refute this contention, the court finds that the restrictions upon the ability of the inmates to obtain physical exercise or engage in recreational activities do not approach the severity of cruel and unusual punishment.

■ The final allegation of the inmates' complaint is simply not cognizable under § 1983 since it does not rise to constitutional dimensions. A federal court has no authority to interfere with the administration of a state prison system unless paramount federal constitutional or statutory rights are violated. Breeden v. Jackson, 457 F.2d 578 (4th Cir. 1972). Petitioners allege that they aré denied the right to maintain a savings account and are required to accept their pay in canteen tickets which must be spent within the Unit. The Superintendent's affidavit indicates that the Unit follows Division Guidelines by crediting ten cents a day of an inmate's earned income to a holding account which earns interest. The balance of an

inmate's earned income is deposited in his spending account, however, such funds may be transferred to the holding account upon written request. This is a matter entirely within the purview of the prison authorities and does not merit consideration in this court.

For the aforementioned reasons this complaint seeking injunctive relief is hereby denied and the respondents' motion for summary judgment is granted.

The clerk is directed to send a certified copy of this opinion and judgment to the petitioners and counsel for respondents.