538 F.2d 541
 Robert (Bobby) SMITH et al., Appellees,
v.
Vernon Lee BOUNDS, Commissioner, State Department of
Correction, and Stanley Blackledge, Warden,
Central State Prison, Raleigh, North
Carolina, Appellants.
Donald W. MORGAN et al., Appellants,
v.
R. L. TURNER, Superintendent of Odom Correctional
Institution of the North Carolina Department of
Correction, Appellee.
John HARRINGTON et al., Appellants,
v.
James HOLSHOUSER, Governor, State of North Carolina, et al.,
Appellees.
 Nos. 74-2378 to 74-2380.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 8, 1975.
Decided Sept. 30, 1975.
 
 Patrick Antrim (third-year law student) and Howard Manning, Raleigh, N. C. (Court-appointed in Nos. 74-2378 and 74-2379) (Barry Nakell, Chapel Hill, N. C. (Court-appointed in Nos. 74-2378 and 74-2380), on brief), for appellees in No. 74-2378 and for appellants in Nos. 74-2379 and 74-2380.
 Jacob L. Safron, Asst. Atty. Gen. of N. C. (Rufus L. Edmisten, Atty. Gen. of N. C., Raleigh, N. C., on brief), for appellants in No. 74-2378 and for appellees in Nos. 74-2379 and 74-2380.
 Before HAYNSWORTH, Chief Judge, ANDERSON, Senior Circuit Judge,* and RUSSELL, Circuit Judge.
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 The appeal in these three consolidated cases arose out of like claims asserted by various inmates of the North Carolina Correctional System to the effect that, by failing to provide them with adequate legal library facilities, the State was denying to them reasonable access to the Courts and equal protection of the laws as guaranteed by the First and Fourteenth Amendments. The District Court granted plaintiffs' motion for summary judgment and required the responsible State officials to submit a proposed plan for implementing the State's obligation to provide adequate library facilities for the use of indigent prisoners seeking to file pro se habeas or civil rights actions, or an acceptable alternative therefor. The State, obedient to this order, filed a plan for prison legal research facilities. It would seem that at this point the petitioners, among other things, objected to the omission from the plan of any legal defenders' program by way of a supplement to the library facilities proposed under the plan. The Court accordingly ordered counsel for all parties to submit briefs on the issue of whether an independent attorneys' office, supplementary to the library facilities was necessary to satisfy proper constitutional standards. After consideration of the briefs filed, the Court refused to require the State to establish an independent attorneys' office and approved, with modification, the library controversy.
 
 
 2
 Both the State and the petitioners have appealed the State from the order for summary judgment because it contends it is without any obligation to provide prisoners with legal research facilities or an alternative therefor, and the plaintiffs from the order approving, with modification, the proposed plan, because they urge such plan is inadequate.
 
 
 3
 We affirm the action of the District Court in granting summary judgment and, with a minor modification, in approving the plan submitted as satisfying the constitutional obligation of the State to furnish either legal research facilities to the inmates of its correctional system or an acceptable alternative therefor, in accordance with the provisions of the order for summary judgment as granted by the District Court.
 
 
 4
 The North Carolina Department of Correction has custody of approximately 10,000 prisoners. These prisoners are housed in some 80 prison units situated in 67 different counties, stretching from one end of the State to the other. The population in these units varies from 1086 in Central Prison to as little as 13 in the Warrenton Unit and the units stretch from the Carrituck Subsidiary unit in the east, to the Haywood County Subsidiary unit in the west, a distance of 475 miles. Fifteen of the units house less than a hundred prisoners, fifty from 100 to 200 prisoners, and 10 house over 200 prisoners. The reason for this diffusion of facilities and wide distribution of the prison population is the desire to facilitate work release and other rehabilitative programs and, wherever thought feasible, to keep the prisoners near their families and within home counties, calculated to aid in their subsequent successful re-entry into society. The only unit having a writ room and the semblance of a legal library is the Central Prison in Raleigh. Under the plan approved by the District Court, there would be "approximately seven core libraries located in units throughout the state. Each of these units * * * (would) service a number of designated institutions. In selecting which units * * * (would) be the site of libraries, the Department of Correction * * * (would) consider from which units the most petitions are most likely to originate, and further it * * * (would) consider geographic access." The site selections, however, were subject to the approval of the Court. The plan, also, had various provisions whereby the facilities would be made available to the prisoners.[1] The plan, also, contemplated a library consisting of certain specified legal reports, statutes or treatises.[2]
 
 
 5
 The argument of the State that it was not obligated to submit such a plan and that the grant of summary judgment to require such submission is without merit. Barring the development of an acceptable alternative, the State was bound to make available on some reasonable basis to the inmates of its penal institutions adequate legal research facilities. The District Court extended to the State an opportunity to present an acceptable alternative. The State did not offer such alternative. Under those circumstances, its duty was plain: The State was obligated to provide the inmates with adequate legal research facilities. Its admitted failure to do so warranted the grant by the District Court of summary judgment.
 
 
 6
 Petitioners, on the other hand, argue that the plan, as approved, as satisfying the requirements of the order for summary judgment, is deficient in that it fails to include provision for an independent attorneys' office to supplement the library facilities made available to the inmates and that the library facilities themselves are not extensive enough. The District Court, while finding that the addition of an independent attorneys' office would be helpful, held that the State was not obligated to provide such additional assistance. In cases which have arisen since the pioneer authority, Gilmore v. Lynch (N.D.Cal.1970) 319 F.Supp. 105, aff. sub. nom. Younger v. Gilmore (1971) 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142, it has been generally assumed that adequate legal research facilities and an acceptable legal assistance program are to be thought of as alternatives and not as supplements to each other in the discharge of the State's obligation in this area. See Kirby v. Ciccone (8th Cir. 1974) 491 F.2d 1310, 1312; Noorlander v. Ciccone (8th Cir. 1973) 489 F.2d 642, 650-1; Johnson v. Anderson (D.Del.1974) 370 F.Supp. 1373, 1385; cf. Ross v. Moffitt (1974) 417 U.S. 600, 616-18, 94 S.Ct. 2437, 41 L.Ed.2d 341. We agree and are of opinion that the District Court correctly ruled that the State is under no constitutional duty to offer the inmates of its penal institutions both adequate legal research facilities and an independent attorneys' office, however helpful the dual service might be.[3]
 
 
 7
 In view of the great variety in prisoner population in the many diffuse and widely distributed prison installations in the North Carolina prison system, we, also, find that the provisions for the use of the facilities and the adequacy of the facilities themselves, meet constitutional standards save in one particular. The instance in which we are of the opinion the plan is deficient is the differentiation made in the rights of male and women prisoners. Women prisoners are afforded under the plan less accessibility to legal research facilities than male prisoners. The plan states no substantial reason for this discrimination nor is one apparent in the record. See Reed v. Reed (1971) 404 U.S. 71, 76, 92 S.Ct. 251, 30 L.Ed. 225; Eslinger v. Thomas (4th Cir. 1973) 476 F.2d 225, 230-1. Without such a showing, the discrimination against female prisoners is invalid. The plan must be modified by removal of this discrimination.
 
 
 8
 As modified, the decree of the District Court herein is affirmed.
 
 
 
 *
 Second Circuit, Sitting by Designation
 
 
 [1]
 The plan further provided:
 "In each unit forms will be provided for the inmates to request permission to use the library. When an inmate makes a request to use the library, the request will be forwarded to the library in the immediate area. A date will be set for that inmate to use the library. The inmate will indicate approximately how much time will be required to research his particular problem. In most cases a full day's use of the library will be allotted. Therefore, the inmate will be taken, if necessary, to that unit on the night before, housed there overnight, permitted to use the library all day, and then be taken to his home unit on the following day. It is also possible that the inmate can be taken to the institution housing the library on the morning of the day he proposes to use it and then return to his home unit on the evening. This is a logistical problem that will have to be worked out when the libraries are in actual operation. In any event, housing will be made available for inmates desiring to use the library in those cases in which an overnight stay is required.
 "The library will consist of the books in the list appended hereto. In the case of prisoners on indefinite non-punitive segregation in Central Prison and for Correctional Center for Women, we recommend establishing smaller core libraries containing basically N.C. General Statutes and treatises. Women inmates and those on INS may request volumes from the library which will probably be located in Central Prison. An area will be set aside at Women's Prison and in the INS cell block area for working with research material.
 "The library will be housed in a room large enough to contain adequately all volumes on hand plus those that will be added by normal expansion. It will be well lighted and suitable for research purposes. Writing material, pen and paper will be provided. It is anticipated that each library will make use of one or two inmates as typists to prepare court petitions and who shall also supervise the day to day use of the library. In order to preserve materials in the library, inmates will be searched upon entering and upon leaving the library. Those inmates who work in the libraries will be assigned library duties on a permanent basis. They will be trained to the best extent possible in researching legal questions and assisting inmates in their research. They will also be permitted to help illiterate and semi-illiterate inmates. It will be recommended to the Corrections Commission that it be specifically made a violation of Department regulations for an inmate to hold himself out as a lawyer, or to accept fees or any payment of any sort for assisting other inmates in their research.
 "Such restrictions as are placed on the inmates shall be in accordance with the limitations set forth in Johnson vs. Avery. The library will be subject to the overall supervision of Department personnel. A prison librarian will be in charge of dispersing legal materials to the various libraries.
 "Inmates who are under a deadline, e. g. those filing appeals, shall be granted priority over other inmates in the use of the library and the Department will see that those inmates are given access to library within the required time as long as the Department is notified in adequate time to allow the inmate to use the library. For other inmates there may be a waiting period of up to three or four weeks.
 "Inmate will have access to a Xerox machine for copying opinions, statutes, etc. This will be on a cost basis to those inmates who are able to pay. Those who are not will be permitted to use the library free. In regard to the posting of inmate petitions to the courts, postage will be paid by the inmates themselves if they are able to do so; if not, by the Department of Correction. In addition to the legal form books which are recommended, the sample forms will be made available in the libraries plus those forms authorized for use in the appropriate Federal Judicial Districts.
 "It is anticipated that approximately ten inmates shall be able to use a library on any given day. Furthermore, inmates simply desiring forms on which to petition the courts may write to the library nearest them and request the forms to be sent. As departmental personnel and inmate assistants gain expertise in this area, it is anticipated that increasingly better legal services will be available to the inmate. By this proposed plan, with optimum use of the library some 350 inmates each week could be making use of research materials in the libraries. In addition to this figure, many inmates will be assisted by having access to forms when they do not actually need the research facilities."
 
 
 [2]
 
 FNLIBRARY MATERIALS
 "North Carolina General Statutes
 North Carolina Reports (1960-__)
 N. C. Court of Appeals Reports
 Strongs N. C. Index
 North Carolina Rules of Court (West)
 U. S. Code Annotated (West)
 Title 18
 Title 28 §§ 2241-2254
 Title 28 Rules of Appellate Procedure
 Title 28 Rules of Civil Procedure
 Title 42 §§ 1891-2010
 Supreme Court Reporter (West (1960-__)
 Federal Reporter 2d (West) (1960-__)
 Federal Supplement (West) (1960-__)
 Black's Law Dictionary (West)
 Sokol Federal Habeas Corpus (Michie)
 Lafave and Scott Criminal Law Hornbook (West) (2 copies)
 Cohen Legal Research
 Criminal Law Reporter (Bureau of National Affairs)
 Palmer Constitutional Rights of Prisoners (Criminal Justice Text Series)
 Core
 North Carolina General Statute
 Black's Law Dictionary (West)
 Sokol Federal Habeas Corpus (Michie)
 Lafave and Scott Criminal Law Hornbook (West) (2 copies)
 Cohen Legal Research
 Criminal Law Reporter (Bureau of National Affairs)
 Palmer Constitutional Rights of Prisoners (Criminal Justice Text Series)
 MODIFICATIONS BY COURT
 
 
 [1]
 that two copies of Title 28 U.S.C.A. § 2254 and Title 42 U.S.C.A. §§ 1891-1984 be required for each core library;
 
 
 [2]
 that no reporter advance sheets or volumes be discarded, in effect giving each library two volumes of each current reporter, * * *."
 
 
 [3]
 Of course, the State would have the right, should it later determine that independent legal counsel for prisoners would be preferable to providing them adequate legal research facilities, to apply to the District Court for permission to adopt a legal counseling service in lieu of the library facilities, as now provided under the order of the District Court