**Stanley Sylvester HARRIS, Appellant,**

v.

**Richard YOUNG, Terrell Don Hutto, Appellees.**

No. 81–6800.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 10, 1982.

Decided Aug. 16, 1983.

Arnold B. Snukals, Richmond, Va. (Brown, Bruner & Cooley, Richmond, Va., on brief), for appellant.

Alexander E. Conlyn, Asst. Atty. Gen., Richmond, Va. (Gerald L. Baliles, Atty. Gen. of Virginia, Richmond, Va., on brief), for appellees.

Before WIDENER and MURNAGHAN, Circuit Judges, and GORDON,* District Judge.

GORDON, Senior District Judge.

Appellant Harris seeks reversal of the District Court's grant of summary judgment in favor of T. Don Hutto, Director of the Virginia Department of Corrections, and Richard Young, now Regional Administrator, Western Region, Division of Adult Services, in his *pro se* civil rights suit brought under 42 U.S.C. § 1983. Harris alleges a violation of his constitutional right of access to the courts resulting from Appellees' failure to provide him with sufficient access to an adequate law library during his two and one-half years in the Richmond City Jail (the Jail). Appellant was incarcerated in the Jail in January 1976 and convicted of grand larceny in late January 1977. He remained in the Jail during the pendency of his direct appeals which were exhausted in August 1977, until his transfer to another facility in May 1978.

Appellee Young served as Acting Warden of the Virginia State Penitentiary from September 1977 to May 1978, when he moved to his present post. Hutto was Director of Corrections during the relevant period of the lawsuit.

* The Honorable Eugene A. Gordon, United States District Judge for the Middle District of North Carolina.

It is undisputed that the law library in the Jail was of minimal utility prior to June 1978. Not until then did the library have any court reports. Until that date the most useful volumes appear to have been several digests and multi-volume sets on Virginia jurisprudence, which would have been wholly inadequate for researching criminal law or prisoner's rights issues. Also, the time of access given each inmate was limited severely. By July 1978, however, the resources in the library could meet constitutional muster, though the access rules may still have been inadequate (the record is unclear). *See, Williams v. Leeke,* 584 F.2d 1336 (4th Cir.1978), *cert. denied,* 442 U.S. 911, 99 S.Ct. 2825, 61 L.Ed.2d 276 (1979).

The District Court granted Hutto's and Young's motion for summary judgment, holding that they were entitled to qualified immunity under *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978). The District Court found that the obligation of state officials to provide inmates with an adequate law library was not known to the Appellees until the Supreme Court released its decision in *Bounds v. Smith,*[1] on April 27, 1977—some fifteen months after the Appellant had been incarcerated. For the one year the Appellant spent in the Jail subsequent to *Bounds,* the District Court found that the Appellant's access to the courts had not been impeded as evidenced by several habeas corpus petitions and civil suits which he had filed during that time, and the District Court held that the Appellees were entitled to immunity for a reasonable period during which they acquired books for a law library. The District Court found the fourteen month lag, from April 1977 to June 1978, to be reasonable.

I.

In review of the District Court's disposition of this case, we stop before reaching the immunity issue in order first

1. 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977).

to consider whether Appellant has named the proper parties. The Director of the Virginia Corrections Department has been found to have the statutory duty to oversee conditions, including library conditions, in both local and state penal institutions. *Stinnie v. Fidler,* 75 F.R.D. 462 (E.D.Va. 1977); *Payne v. Rollings,* 402 F.Supp. 1225, 1228 (E.D.Va.1975). Hutto is, therefore, a proper party in a suit challenging the conditions in a local Virginia jail. Young is in a different position as regards this suit. As Acting Warden of the State Penitentiary from September 1977 until May 1978, he had no discernible legal obligation regarding the library at the Jail.[2] Appellant has failed to allege any connection sufficient to impose such an obligation on Young. He is, therefore, an improper party, and we grant Young summary judgment on this ground. Rule 21, Fed.R.Civ.P.

The District Court found that the Appellant's access to the courts had not been impeded. His having filed several habeas petitions and civil suits was taken by the court as proof that he had, in fact, had adequate access to the courts. Although this logic seems sound at first glance, it is flawed. Our concern in defining the Appellant's injury is not those complaints he filed during this period nor the allegations in those complaints; rather, our concern is those petitions and civil actions he did not file and the allegations left out of the complaints. We affirm the District Court on its second ground, that is, the Appellee Hutto is entitled to summary judgment because he may successfully claim immunity.

The Supreme Court has stated that its "main concern here is 'protecting the ability of an inmate to prepare a petition or complaint,'" *Bounds,* 430 U.S. at 828 n. 17, 97 S.Ct. at 1498 n. 17 [quoting *Wolff v. McDonnell,* 418 U.S. 539, 576, 94 S.Ct. 2963, 2984, 41 L.Ed.2d 935 (1974)]. Several conclusions follow from this and the added statement that the right to be protected is the right to have a "reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds,* 430 U.S. at 825, 97 S.Ct. at 1496. Because an inmate is unable to discover his rights when library access or other access to the law is denied him, any complaint rightly alleging a present denial of access to a library or other assistance states a valid claim for equitable relief. It is unfair to force an inmate to prove that he has a meritorious claim which will require access until after he has had an opportunity to see just what his rights are. Not only unfair, it is jurisprudentially unnecessary. *See, Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1977).

The second conclusion is that the best remedy for a breach of this right is equitable relief crafted to facilitate the filing of the meritorious petition or complaint.

The social cost of litigating "constitutional torts" is problematic and substantial. The efficient operation of government is endangered by the phenomenal growth in this type litigation. *See, Harlow v. Fitzgerald,* 457 U.S. 800, 813–19, 102 S.Ct. 2727, 2736–39, 73 L.Ed.2d 396, 50 U.S.L.W. 4815, 4819–20 (1982). Despite the social cost, the

---

2. The Dissent argues that Harris was sentenced to a term of twenty-six years in the Virginia State Penitentiary. Young, as acting warden, was therefore responsible for Harris's care regardless of where Harris was sent—including the Jail. As a result Young is liable because he constructively denied Harris access to the courts. The Dissent cites no law for this proposition.

There is nothing in the record which indicates that Harris was sentenced to serve this term of imprisonment in the penitentiary at which Young was serving as warden. To the contrary, it is the Director of the Department of Corrections who, according to statute and Department regulations, has the authority to as-

sign prisoners to a particular facility. Va.Code § 53–21.1 (1974).

The position taken by the Dissent would subject Young, who had no authority over local jails and no authority to transfer Young from the Jail to the state penitentiary, to liability on a theory that Young had a duty to assure Harris either a room at his institution or equally equipped alternative lodging. This theory is inconsistent with § 1983 jurisprudence. *E.g., Watson v. Interstate Fire & Casualty Co.,* 611 F.2d 120 (5th Cir.1980); *Bogard v. Cook,* 586 F.2d 399 (5th Cir.1978) *cert. denied* 444 U.S. 883, 100 S.Ct. 173, 62 L.Ed.2d 113 (1979); *Fidtler v. Rundle,* 497 F.2d 794 (3rd Cir.1974).

courts and the society at large have an obligation to insure that the courthouse door is always open. Equitable relief given to any party showing that the door has been closed is the best insurance, and compensating any party who has lost the opportunity or has been delayed in petitioning the courts with a claim of·*prima facie* merit functions to make those trying to close the courthouse door think twice and compensates the victim.

In *Harlow* the Supreme Court made an effort to reduce the burden of litigation on society and its public officials, stating, "[i]nsubstantial claims should not proceed to trial." *Id.* at 816, 102 S.Ct. at 2737. We conclude that this claim is one that should be decided on summary judgment in favor of the Appellee Hutto.

Most recently in *Harlow, supra,* the Supreme Court discussed the immunity to be given to public officials, and applying that analysis in this case we agree with the District Court that Hutto did not violate the "clearly established" constitutional rights of the Appellant.

■ The key question to be answered is, when was the law on library or attorney access for prisoners in local jails so enunciated by the courts that a Virginia official knew or should have known that those rights were established. The District Court accepted the defendants' argument that *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), published on April 27, 1977, was the point at which the Virginia state officials knew and had a duty to know of the prisoners' rights. Prior to *Bounds* being decided in the Supreme Court, in *Peterson v. Davis,* 421 F.Supp.

1220 (E.D.Va.1975), *aff'd without opinion,* 562 F.2d 48 (4th Cir.1978) and *Collins v. Haga,* 373 F.Supp. 923 (W.D.Va.1974), district courts, applying *Younger v. Gilmore,* 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971), held that a law library or an attorney assistance program was required in the Virginia state prisons. The trickle down time necessary for the right to adequate law library access to become "known" or "clearly established" regarding local facilities like the Richmond City Jail may seem inordinately long, running from *Gilmore* in 1971 to *Collins* in March 1974 to *Bounds* in April 1977, but *Gilmore* was itself not as clear as to the state's duties as it might have been, and in all of the cases prior to *Williams, supra,* the institution in question was a state facility, not a local one. There are significant differences between state and local facilities, including the average length of stay and the type of crime for which inmates are incarcerated which, taken together, reasonably support the argument that local jails, operating under limited budgets, were not required to meet the same obligations to inmates as the state facilities.[3] In short, until this argument had been rejected by a court, the reasonable public official acting within his discretion to dispense monies or order the dispensing of public funds by localities, could not be said to be incorrect if he stated that the duties of local jails to their inmates were not clearly established. *See, e.g., Williams,* 584 F.2d at 1343 (Hall, Circuit Judge dissenting).

The court in *Williams, supra,* split 2–1 with Judge Hall, an able and experienced Judge, firm in the position that the Rich-

---

**3.** The Court notes that the Appellant was in the Jail almost two and one-half years—far more time than one would expect for a local jail—and it may well be argued that no matter what you call an institution: jail, prison, farm or other enclosure that incarceration therein for such a long period of time would put an official on notice that he was obliged to provide access to an adequate library or to counsel long before *Williams.* Were this two and one-half years served post-conviction and without access to a library or counsel, or were it alleged this is a frequent practice, we might well find no immu-

nity attached. But Appellant served only one and one-half years after trial, and of that time, only nine months were served after his direct appeals were exhausted, and with the appeal his undisputed right to counsel.

From August 1977 until May 1978 the Appellant's "ability to prepare a petition or complaint" was hindered, but we cannot say that this one case of a delayed transfer is enough to put state and local officials on notice that the Richmond City Jail had become the full functional equivalent of a state prison, and thereby subject to the same institutional duties.

mond Jail was distinguishable from those institutions under *Bounds.* It would not be fair to hold a state official liable for not fulfilling "clearly established" obligations when a federal Circuit Court of Appeals was unable to unanimously decide the same issue.

Harris complains of inadequate legal materials and of overly restricted access to those materials the Jail did have prior to June 1978. We find that the invalidity of allowing this division of research periods cannot be said to have been "clearly established" until this court's opinion in *Williams.* What is or is not constitutionally adequate when it comes to such questions about particular access regulations or particular books is most often a matter of guesswork on the part of a public official, and it would be unfair and inefficient to make immunity contingent on guessing correctly on such an issue.

Finally, we agree with the District Court that a law library cannot be built in one day, and therefore do not find that the lag between April 1977 and June 1978 is so long that Hutto should be stripped of his immunity. Nevertheless, we agree with some reluctance, and wish to make clear that what is reasonable must be judged for each case; because this case is affirmed from summary judgment we do not establish a safe harbor book list or implementation period. The courts will not tolerate deliberate foot dragging in the name of fiscal necessity.

The judgment of the District Court is AFFIRMED.

WIDENER, Circuit Judge, concurring:

While it is true that Hutto may be a proper *party,* the mere existence of a supervisory statutory duty is not enough to fix his *liability* for damages as we have specifi-

cally held in *Vinnedge v. Gibbs,* 550 F.2d 926 (4th Cir.1977). In *Vinnedge* we held that Gibbs, an underling of the Director of the Department of Corrections, was not liable because he had not been personally involved. It necessarily follows that the Director of Corrections, the superior, also may not be made liable by the mere existence of a supervisory statutory duty absent personal involvement.

I concur in that part of the opinion holding that Young is not a proper party.

I also concur in that part of the opinion holding Hutto to be immune from liability except that I believe the expression of possible liability expressed on a hypothetical fact situation in note 3 is unnecessary to our decision, and accordingly I do not concur in that expression.

MURNAGHAN, Circuit Judge, dissenting:

The panel majority misconceives the law of qualified "good faith" immunity in concluding that the defendants, Richard Young and T. Don Hutto, are immune from suit for damages under 42 U.S.C. § 1983.[1] The constitutional obligation of responsible state officials to provide inmates with adequate legal resources was firmly established well before the time period at issue in the case before us. In fact, the obligation had been thrice imposed upon the very state system under challenge here in federal litigation that was completed before the plaintiff, Stanley Sylvester Harris, ever spent a moment in the Commonwealth's custody as a convicted felon. I therefore am constrained to dissent.

It has never been the law that a state official is immune from liability under § 1983 so long as he or she is able to proffer a colorable, and not patently frivolous, argument in support of the denial of a plaintiff's constitutional rights. State officials

---

**1.** The lead opinion concludes that the defendant Hutto enjoys a qualified immunity, a conclusion in which Judge Widener has indicated his concurrence. The panel majority likewise holds that the defendant Young is entitled to dismissal because there has been no adequate showing of his responsibility for the depriva-

tion of Harris' constitutional rights. Because I have concluded that the facts as alleged by Harris sufficiently set out a basis for the liability of defendant Young, *see* n. 6 *infra,* the discussion that follows treats the immunity defense as raised by both Hutto and Young.

have an obligation to be diligent and vigilant when they are dealing with the constitutional rights of the citizenry. If a defendant *knew* of the constitutional right he was infringing, or, alternatively, if, as a reasonable public official, he *should have known* of the constitutional obligation, the immunity defense will not lie. *Harlow v. Fitzgerald*, 457 U.S. 800, 814–15, 102 S.Ct. 2727, 2736–37, 73 L.Ed.2d 396 (1982). "The official cannot be expected to predict the future course of constitutional law." *Procunier v. Navarette*, 434 U.S. 555, 562, 98 S.Ct. 855, 860, 55 L.Ed.2d 24 (1978). By the same token, however, the official cannot stand pat, ignore clearly indicative authority and simply await an absolutely indistinguishable legal decision from the Supreme Court itself that will govern his conduct. Such a dogmatic refusal to accept other reasonable sources of the law amounts to avoidance, if not evasion, of constitutional obligations that any reasonable public official clearly would recognize. The law simply does not invite state officials, prone to recalcitrance and subject to the political and fiscal demands of the voting populace, to blink reality and shirk a plain duty to honor the constitutional rights of others.

If a reasonable public official would have known, by August of 1977, that a prisoner was entitled to adequate legal resources,[2] then the defendants, having failed to do so, cannot now interpose a qualified immunity defense to defeat this cause of action. *Harlow, supra*, at 814–15, 102 S.Ct. at 2736–37; *Procunier, supra*, at 565, 98 S.Ct. at 861; *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975). The evidence on that score is overwhelming. No reasonable public official intent on honoring constitutional imperatives could have denied Harris' right to adequate legal resources.

The pertinent evidence consists of the decisions of the Supreme Court, the courts of appeals, and the Virginia district courts. *E.g., Procunier, supra*, at 565, 98 S.Ct. at 861. Consistently, those courts were, by 1976, firm and fixed in the resolution that inmates are entitled to adequate legal research facilities or, in the alternative, an adequate legal assistance program.

In 1971, the Supreme Court decided *Younger v. Gilmore*, 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971), affirming the landmark decision of a three-judge panel in the Nothern District of California, *Gilmore v. Lynch*, 319 F.Supp. 105 (N.D.Cal.1970). *Gilmore* was a brief one-page per curiam opinion by the Supreme Court. Perhaps the majority is correct in observing that, as a matter of judicial exposition, "*Gilmore* was itself not as clear as to the state's duties as it might have been." Whether *Gilmore*'s exposition could have been clearer, however, is not the question. The question is whether the holding in *Gilmore* was clear enough to put state officials on notice of their constitutional obligations. The answer to that question is best reached by considering the evidence.

On the basis of *Gilmore* and its lower-court progenitor, a veritable groundswell ensued so that almost immediately the universal understanding was that inmates are entitled to adequate legal resources so that their rights to meaningful access to the courts may be effectuated. Circuit courts of appeals so held. *See, e.g., Mead v. Parker*, 464 F.2d 1108 (9th Cir.1972); *Cruz v. Hauck*, 475 F.2d 475 (5th Cir.1973);[3] *Noorlander v. Ciccone*, 489 F.2d 642 (8th Cir. 1973); *Bryan v. Werner*, 516 F.2d 233 (3d Cir.1975); *Knell v. Bensinger*, 522 F.2d 720 (7th Cir.1975). On September 30, 1975, the Fourth Circuit so held, noting that the

---

**2.** Prior to August 1977, Harris' constitutional rights were satisfied without regard to the adequacy *vel non* of the law library at the Richmond City Jail. That is so because, until August 1977, the Commonwealth was providing the plaintiff with court-appointed counsel. The deprivation of constitutional rights began when Harris' appeal from conviction, and thus his right to counsel, expired, and it is the state of

the law at the time the deprivation of constitutional rights began which is relevant to the qualified immunity defense.

**3.** Decided after remand from the Supreme Court for further consideration in light of *Younger v. Gilmore. See Cruz v. Hauck*, 404 U.S. 59, 92 S.Ct. 313, 30 L.Ed.2d 217 (1971).

state's "duty was plain: The State was obligated to provide the inmates with adequate legal research facilities." *Smith v. Bounds,* 538 F.2d 541, 544 (4th Cir.1975), *aff'd,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). We reiterated and reaffirmed that rule on January 19, 1976, in *Kirby v. Blackledge,* 530 F.2d 583 (4th Cir.1976) (Per Justice Clark, sitting by designation).

I am at a loss to discern what lack of clarity existed in the Supreme Court's decision in *Gilmore,* or in the decisions of the courts of appeals, or in our decisions in *Bounds* and *Kirby*—all decisions which well preceded the time period at issue here. The lesson of those cases certainly was not lost on the district courts within the Fourth Circuit. Judge Merhige, sitting in the Eastern District of Virginia, applied our *Bounds* decision in a case involving the correctional system of the Commonwealth of Virginia. On September 28, 1976—four months before Harris was convicted, eleven months before Harris' appeal expired—Judge Merhige's decision in *Peterson v. Davis,* 421 F.Supp. 1220 (E.D.Va.1976), *aff'd mem.,* 562 F.2d 48 (4th Cir.1977), was issued, holding that Virginia must provide its inmates either adequate legal research facilities or an adequate legal assistance program. *Id.* at 1223–24.

Judge Merhige was not alone among his brethren in Virginia. Judge Dalton, in the Western District of Virginia, applied the clear rule of *Gilmore* against the Commonwealth of Virginia *twice*—and, indeed, applied the rule even before our decision in *Bounds* appeared. Judge Dalton held, on the basis of the Supreme Court's *Gilmore* decision, that the Commonwealth faced an obligation to ensure its inmates adequate legal resources, an obligation satisfied in those cases by a legal assistance program. *See Russell v. Oliver,* 392 F.Supp. 470, 473 (W.D.Va.1975), *modified,* 552 F.2d 115 (4th Cir.1977); *Collins v. Haga,* 373 F.Supp. 923, 925 (W.D.Va.1974).

That evidence is surely enough to put a reasonable public official in Virginia on no-

tice of his or her constitutional obligations. The Seventh Circuit, facing a shorter list of authorities and not benefitted by decisions actually involving the state system at issue, concluded that the Supreme Court's decision in *Gilmore*—entered in 1971—was enough to put state officials on notice of their obligation to provide inmates adequate legal resources. *Knell, supra,* at 725–26. In accord with that determination is the Supreme Court's observation in *Bounds, supra,* 430 U.S. at 828–29, 97 S.Ct. at 1498–99, that its decision therein was "a reaffirmation of the result reached in *Younger v. Gilmore.*"

All that remains to be considered is whether the fact that the Richmond City Jail is not a prison is a fact of consequence. As the Fifth Circuit perceived in as early as 1975, the denomination of an institution as a "prison" or a "jail" is irrelevant for purposes of determining whether a state is obligated to provide its prisoner adequate legal resources. The relevant question to be answered by state officials is whether the prisoner is facing a brief or temporary period of confinement. If the anticipated length of confinement is not brief or temporary, then the constitutional obligations attach and must be satisfied. *Cruz v. Hauck,* 515 F.2d 322, 333 (5th Cir.1975), *cert. denied,* 424 U.S. 917, 96 S.Ct. 1118, 47 L.Ed.2d 322 (1976). *See also Williams v. Leeke,* 584 F.2d 1336 (4th Cir.1978), *cert. denied,* 442 U.S. 911, 99 S.Ct. 2825, 61 L.Ed.2d 276 (1979). Neither *Williams* nor *Cruz* established a "new" rule. Neither case extended the state's constitutional duties to new unchartered fields. Rather, those decisions merely acknowledged logically inescapable implications of the basic doctrine first set forth in *Gilmore.*

Of critical import, then, is the fact that Harris was sentenced to a total of 26 years in confinement. Upon his conviction, Harris was legally committed to the custody of the director of the Commonwealth's Department of Corrections. Va.Code § 53.1–20 (1982 Repl. Vol.).[4] The anticipated

---

4. Both Judge Gordon, in the lead opinion, and I conclude that defendant Hutto, as director of

the Department of Corrections, is directly responsible for the conditions of Harris' confine-

length of confinement could not rationally be deemed brief or temporary and, consequently, the Commonwealth's obligation to ensure its prisoner adequate legal resources attached. The director, as the official legally responsible for the conditions of Harris' confinement, could not wash his hands of that obligation by the simple expedient of transferring Harris to another correctional system without adequate facilities, nor could the director avoid his constitutional duties by leaving Harris in the Richmond City Jail, the facility which housed Harris before his trial and had been and remained

unequipped to satisfy the constitutional rights of Harris. *See Rich v. Zitnay,* 644 F.2d 41, 42–43 (1st Cir.1981).[5] "Receiving as well as sending officials share responsibility for insuring prisoners' access to the courts," *id.* at 43 n. 1, and that responsibility cannot be shirked by a divide-and-conquer approach whereby the prisoner is confined, in reality, for a substantial period of time, but never for more than a brief or temporary period in any one facility. Such an approach would render the constitutional right no right at all.[6]

ment and, accordingly, is a proper party to the suit.

Judge Widener, in his concurring opinion, expresses the view that Hutto is entitled to dismissal because his liability could only be predicated upon a theory of *respondeat superior,* citing our decision in *Vinnedge v. Gibbs,* 550 F.2d 926 (4th Cir.1977). Such a view fails to acknowledge, however, that Hutto, as the director of corrections, had more than a mere supervisory duty with regard to the conditions of confinement prevalent in the system under his control. In fact, Hutto is the official *personally responsible* for the conditions of Harris' confinement. *See Payne v. Rollings,* 402 F.Supp. 1225, 1228 (E.D.Va.1975).

5. In *Rich v. Zitnay,* 644 F.2d 41 (1st Cir.1981), a Maine prisoner who was transferred to a federal facility in Kansas for security reasons brought a § 1983 suit against Maine corrections officers. The prisoner alleged that the law library at the federal facility was constitutionally inadequate because it did not contain materials on Maine law necessary for the prosecution of state post-conviction petitions. Although the Maine officials undoubtedly had no control over the law library, or any conditions of confinement, at the federal prison, they were held to be proper parties in the suit. "[W]e think that Maine authorities may not wash their hands of their obligation to insure access to Maine courts simply by transferring a prisoner out of state ...." *Id.* at 43. *See also Hohman v. Hogan,* 458 F.Supp. 669 (D.Vt. 1978). The *Rich* court further observed that the federal authorities also would be proper defendants, as "receiving" officials responsible for the conditions of confinement. 644 F.2d at 43 n. 1.

A failure of the majority opinion is its narrow focus upon the actual facility in question, as opposed to the full extent of the confinement which Harris was to face at the hands of the Commonwealth. Perhaps that failure is the consequence of a preoccupation with the concept of a constitutional "obligation" upon the

responsible state officials. A concern with "obligation" or "duty" invariably directs attention to the particular parties and institutions empowered to act, and deflects attention from the "right" owed to Harris, a right which the state's criminal justice system must safeguard. It cannot be seriously argued, for instance, that the Commonwealth's legislators could immunize individual officials by scattering the power to meet constitutional obligations across several offices. In that instance, all the officers would stand responsible. Indeed, that is the logical underpinning of the *Rich* decision: By formally reducing the power of its officers, the State of Maine could not avoid responsibility for the constitutional rights of the individual it committed to confinement.

That much understood, the futility of the defendants' distinction between the city jail and the state penitentiary, each with its own chief officer and bureaucracy, is established.

6. For the same reasons, a theory exists to hold defendant Young liable under § 1983 and, consequently, he is not entitled to dismissal on the ground that an adequate basis for his liability has not been established.

Harris' verified complaint alleges that he was entitled to be "immediately received into Virginia Penitentiary, as mandated by plaintiff's convictions and sentences" and, thus, that he was entitled to the "full benefits of rights and privileges afforded and enjoyed by penitentiary inmates." Plaintiff's theory for holding Young, the Acting Warden of the penitentiary at the time Harris was deprived of adequate legal resources, liable under § 1983, then, is analogous to the theory advanced in *Rich v. Zitnay,* 644 F.2d 41 (1st Cir.1981)—the warden should not escape responsibility for a prisoner who, in effect, is properly under his care but has been transferred to a different, constitutionally inadequate, facility.

Because there has been no trial on the merits, it is impossible to reject the factual contentions made by Harris in his verified complaint. Assuming, as we must, the truth of the facts

The record reveals that, accepting the plaintiff's allegations, an unconstitutional deprivation did in fact occur, and any reasoned and rational reading of the state of the law at the time the deprivation occurred yields but a single conclusion—the defendants were on clear and ample notice of the constitutional obligations they failed to meet. I would reverse the decision of the district court and remand the case for further proceedings.

asserted in the plaintiff's complaint, *e.g., Vinnedge v. Gibbs,* 550 F.2d 926, 927 (4th Cir. 1977), it follows that dismissal of defendant Young is, at the least, premature. *See e.g., Vinnedge, supra,* at 927 ("Because we are un-

able to say with assurance from the record that a claim upon which relief could be granted was not stated ..., we must vacate the district court's order of dismissal as to" certain defendants).