James HUDSON, Plaintiff,

v.

Thomas P. ISRAEL, Superintendent,
Wisconsin Correctional Institution,
Defendant.

No. 83–C–849.

United States District Court,
E.D. Wisconsin.

Oct. 4, 1984.

James F. Hudson, pro se.

Robert D. Repasky, Asst. Atty. Gen.,
Madison, Wis., for defendant.

## DECISION AND ORDER

WARREN, District Judge.

Presently before the Court in this matter is the defendant's motion to dismiss the complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. The Court has carefully considered this matter and concludes, for the reasons stated herein, that the motion must

be granted, subject, however, to the plaintiff's petitioning to reopen as to a proper party-defendant.

## BACKGROUND

This action was initiated on February 18, 1983, when the plaintiff, James Hudson, filed his pro se complaint in the United States District Court for the District of Minnesota. In his complaint, the plaintiff states that he is presently serving a term of up to twenty years imprisonment on a state conviction for second degree murder. Originally incarcerated at the Waupun Correctional Institution at Waupun, Wisconsin, the plaintiff claims that in October of 1981, he agreed to be transferred to a Minnesota correctional facility pursuant to an agreement between the States of Wisconsin and Minnesota for the exchange of prisoners, apparently executed for the purpose of alleviating overcrowding at the Waupun facility.

The plaintiff alleges that his efforts aimed at securing an "effective hearing in the matter of his conviction," Plaintiff's *Complaint* at 2 (February 18, 1983), have been stymied by the refusal of the Minnesota prison officials to equip the facility library with Wisconsin legal material needed for the appeal of his conviction in the Wisconsin state courts. He charges that Minnesota officials advised him that "they didn't have to keep a up date [sic] law library because Minnesota prisoners had other legal agencies for their legal affairs." Plaintiff's *Complaint* at 1 (February 18, 1983).

The plaintiff further claims that neither the Minnesota nor the Wisconsin legal agencies or services would assist him in securing the advice or materials he seeks, the former because "they did'nt [sic] have any jurisdiction in the matter or petitioner appeal," and the latter because "petitioner was out of the state of Wisconsin." Plaintiff's *Complaint* at 1 & 2 (February 18, 1983). Finally, the plaintiff states that although he notified respondent Thomas R. Israel, the warden of the Waupun Correctional Institution at the time of the plaintiff's transfer, that he was not being afforded either access to Wisconsin legal materials or assistance in securing needed advice, the respondent failed to respond.

The upshot of the complaint is that the respondent has allegedly infringed the plaintiff's constitutional right to access to the courts, in violation of 42 U.S.C. § 1983. Accordingly, the plaintiff seeks, among other things, declaratory judgment that his rights have been violated and that the Wisconsin-Minnesota transfer agreement is null and void; compensatory and punitive damages together totalling $700,000; and preliminary and permanent injunctive relief requiring that the plaintiff not be transferred to any other facility during the pendency of this litigation and that he be "release[d] ... from the herein described burden...." Plaintiff's *Complaint* at 2 (February 18, 1983).

On March 24, 1983, the defendant filed the present motion to dismiss the action for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Also incorporated in the dismissal petition was the claim that the district court lacked jurisdiction over the subject matter of this suit.

On June 15, 1983, Magistrate Floyd E. Boline of the District of Minnesota issued his *Report and Recommendation* in this action, reviewing the relevant case law, analyzing the circumstances of the present suit, and recommending that it be transferred to this district for further proceedings, pursuant to 28 U.S.C. § 1404(a), as follows:

> ... [P]laintiff has venued his case in the receiving state of Minnesota rather than in the sending state of Wisconsin.... [T]he Court believes that ... this matter is properly venued in the United States District Court for the Eastern District of Wisconsin. First, the defendant is in Wisconsin. Second, the obligation to the plaintiff arose from his conviction in Wisconsin. Third, the State of Wisconsin will be providing at its expense the professionals trained in Wisconsin law to both assist plaintiff and to

defend the action.... Fourth, Wisconsin will be providing the pertinent legal research materials that plaintiff will need to pursue his post-conviction relief. Fifth, access to Wisconsin state courts will necessarily involve other Wisconsin authorities in assisting and supervising the custody of plaintiff while he is involved in securing his relief. Finally, Wisconsin has recognized its obligation to provide plaintiff access to the courts for post-conviction relief in its agreement with Minnesota.... Resolution of this case will involve only Wisconsin authorities and Wisconsin post-conviction law as interpreted by the state and federal courts of Wisconsin.... The only relation or connection between this case and Minnesota is the imprisonment of plaintiff at the Oak Park Heights Facility in Stillwater, Minnesota pursuant to the transfer agreement.

Magistrate's *Report and Recommendation* at 3 (June 15, 1983).

Two weeks later, on June 29, 1983, District Judge Diana E. Murphy adopted Magistrate Boline's report and ordered the case transferred to this district for all further proceedings, pursuant to 28 U.S.C. § 1404(a). The case was then randomly assigned to this Court.

On August 2, 1983, defendant's counsel advised by letter that he was adopting for purposes of defending the action in this Court the motion to dismiss filed in March of 1983 in the District of Minnesota. By its own letter of October 25, 1983, the Court established a briefing schedule on that motion, pursuant to which the defendant filed a supporting memorandum on November 15, 1983.

In that memorandum, the defendant argues that dismissal is appropriate on four grounds: first, that the complaint alleges no acts by the defendant upon which liability might be premised. Specifically, the defendant contends that as the superintendent of the Waupun Correctional Institution, he had no obligation with respect to an inmate transferred to a Minnesota facility and that this action under 42 U.S.C. § 1983 must be dismissed since there is no allegation that he was personally involved in any action to deprive the plaintiff of some protected right.

Second, the defendant contends that the complaint fails to state an actionable denial of access to the courts since it incorporates "no allegations that plaintiff sought to use any alternate sources such as the Wisconsin Public Defender, or sought any materials from any other sources such as the University of Wisconsin Law School which makes materials available to inmates." Defendant's *Memorandum In Support Of Motions To Dismiss* at 2 (November 15, 1983). The defendant notes that alternative means of legal assistance such as these have been held to satisfy the constitutional mandate that judicial access be afforded.

Third, the defendant argues that even if the plaintiff's right to access has been infringed, the complaint fails to allege sufficient facts to support a showing of prejudice—a requirement for maintaining a denial of access claim. Finally, it is the defendant's position that to the extent that release from confinement is sought, such relief cannot be secured under 42 U.S.C. § 1983.

Although the plaintiff has not responded specifically to the defendant's memorandum of law filed on November 10, 1983, he had submitted, one month earlier, a letter brief arguing that the motion to dismiss is without merit, for the following reasons:

1. Mr. Israil [sic] is the Superintendant [sic] of the Wisconsin State Prison at Waupun, Wisconsin, therefore has access to the Interstate Compact signed by himself and the Warden of the prison at Stillwater, MN.

2. There are no arrangements made in Minnesota for Wisconsin Prisoners for them to have access to lawbooks, etc.

Plaintiff's *Letter Brief In Opposition To Motion To Dismiss* (October 11, 1983).

Although the issues raised in the dismissal motion have thus not been briefed to the

extent contemplated by Local Rule 6.01, both parties have been heard on this matter, which is now ripe for resolution.

## THE RIGHT OF ACCESS TO THE COURTS AND THE JOINDER OF A PROPER PARTY DEFENDANT

■ It is well-established that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law. *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 578–580, 94 S.Ct. 2963, 2985–2987, 41 L.Ed.2d 935 (1974); *Johnson v. Avery*, 393 U.S. 483, 485–486, 89 S.Ct. 747, 748–749, 21 L.Ed.2d 718 (1969); *Ex parte Hull*, 312 U.S. 546, 549, 61 S.Ct. 640, 641, 85 L.Ed. 1034 (1941). As the United States Supreme Court has recognized, prison authorities are to be afforded considerable discretion in fashioning plans designed to meet this constitutional mandate:

It should be noted that while adequate law libraries are one constitutionally acceptable method to assure meaningful access to the courts, our decision here ... does not foreclose alternative means to achieve that goal. Nearly half the States and the District of Columbia provide some degree of professional or quasi-professional legal assistance to prisoners.... Such programs take many imaginative forms and may have a number of advantages over libraries alone. Among the alternatives are the training of inmates as paralegal assistants to work under lawyers' supervision, the use of paraprofessionals and law students, either as volunteers or in formal clinical programs, the organization of volunteer attorneys through bar associations or other groups, the hiring of lawyers on a part-time consultant basis, and the use of full-time staff attorneys, working either in new prison legal assistance organizations or as part of public defender or legal services offices. Legal services plans not only result in more efficient and skillful handling of prisoner cases, but also avoid the disciplinary problems associated with writ writers [citations omitted]. Independent legal advisors can mediate or resolve administratively many prisoner complaints that would otherwise burden the courts, and can convince inmates that other grievances against the prison or the legal system are ill-founded, thereby facilitating rehabilitation by assuring the inmate that he has not been treated unfairly.... Nevertheless, a legal access program need not include any particular element we have discussed, and we encourage local experimentation. Any plan, however, must be evaluated as a whole to ascertain its compliance with constitutional standards.

*Bounds v. Smith*, 430 U.S. 817, 830–832, 97 S.Ct. 1491, 1499–1500, 52 L.Ed.2d 72 (1977).

In order to ensure that this fundamental right to access to the courts is not arbitrarily infringed, the concomitant right of prisoners to sue for alleged deprivations of access has been explicitly recognized. *See e.g., Vaughn v. Trotter*, 516 F.Supp. 886, 893 (M.D.Tenn.1980) (recognizing, among other things, the right of a "jailhouse lawyer" to assist other inmates with legal problems without official harassment or retribution for doing so); *McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir.1979) (finding that complaint alleging transfer to another facility in retaliation for prisoner's exercise of right to petition courts stated cause of action under 42 U.S.C. § 1983.)

■ It is equally well-established, however, that an action such as the present can be maintained only against a proper defendant and that absent some allegation of personal involvement or knowledge on the part of supervisory personnel, the § 1983 action must be dismissed. *Williams v. Franzen*, 499 F.Supp. 304, 306 (N.D.Ill. 1980); *Monell v. Department of Social Services*, 436 U.S. 658, 690–692, 98 S.Ct. 2018, 2035–2037, 56 L.Ed.2d 611 (1978). In the context of denial of access claims, this general rule has been interpreted to impose

upon the sending state authorities the responsibility for ensuring that their prisoners incarcerated in sister-state facilities are afforded access to home state courts. In *Rich v. Zitnay,* 644 F.2d 41, 43 (1st Cir. 1981), for example, the court held that the corrections authorities of the transferor jurisdiction were properly-named defendants, as follows:

> Here it is the Maine state courts to which appellants [transferred to the Federal Prison at Leavenworth, Kansas] seek meaningful access. A federal court, in fashioning relief to insure such access, might necessarily have to call on Maine rather than Leavenworth authorities to supply professionals trained in Maine criminal law. Or the most ready sources of pertinent legal research materials may be found only in Maine. In view of the likelihood that Maine officials will necessarily have to play a role in the remedy and because of the fundamental nature of the right involved, we think that Maine authorities may not wash their hands of their obligation to insure access to Maine courts simply by transferring a prisoner out of state [citations omitted]. They are therefore properly defendants.

Likewise, in *Hohman v. Hogan,* 458 F.Supp. 669, 672–674 (D.Vt.1978), the court assumed without question that it was the responsibility of the Vermont commissioner of corrections to guarantee that a state prisoner incarcerated in the federal facility in Marion, Illinois be afforded adequate access to the Vermont courts.

■ A necessary corollary to this general principle and the underlying rule that § 1983 liability cannot be imposed absent personal involvement or knowledge is that a warden, absent some greater involvement in the transfer decision other than his or her mere supervision over the institution from which the prisoner was transferred, is not a proper defendant in a denial of judicial access suit like the present. For instance, in *Harris v. Young,* 718 F.2d 620 (4th Cir.1983), a prisoner sought review of the district court's dismissal of his claims of inadequate access while he was incarcerated at the Richmond city jail. Named as defendants were the warden of the Virginia State Penitentiary and the Director of the Virginia Department of Corrections. In considering whether the prisoner had named the proper parties, the court made the following observations:

> The Director of the Virginia Corrections Department has been found to have the statutory duty to oversee conditions, including library conditions, in both local and state penal institutions [citations omitted]. Hutto is, therefore, a proper party in a suit challenging the conditions in a local Virginia jail. Young is in a different position as regards this suit. As Acting Warden of the State Penitentiary from September 1977 until May 1978, he had no discernible legal obligation regarding the library at the Jail. Appellant has failed to allege any connection sufficient to impose such an obligation on Young. He is, therefore, an improper party, and we grant Young summary judgment on this ground.

*Harris v. Young,* 718 F.2d 620, 622 (4th Cir.1983).

Similarly, in *Brown v. Smith,* 580 F.Supp. 1576 (M.D.Pa.1984), a former state prisoner who had been transferred to federal custody sued both federal and state authorities for their alleged infringement of his rights of access to an adequate Massachusetts law library and, consequently, to the courts of that state, where appeals of his state conviction for murder had been initiated. By their motion for dismissal, the federal defendants argued that the sending state shoulders the burden to provide state law books or counsel to represent the plaintiff in his state appeals and that, in any event, the plaintiff could not prevail against them unless he demonstrated that they had taken some action or personally knew of the circumstances giving rise to the denial of access claim. While acknowledging that both points were "persuasive," the district court found the first dispositive and did not reach the second, as follows:

The law seems clear ... that when a transfer occurs from state custody into a federal institution located in another state the transferring state is responsible for providing an adequate law library *or* adequate aid from persons trained in the law of the transferring state....

Basically the cases establish that the federal authorities are not responsible for providing state legal materials in federal penal institutions. The arrangement under which state prisoners are transferred into federal facilities is a contractual one.... The role of the Attorney General ... is to enter into transfer contracts with appropriate state officials after the Director certifies that "proper and adequate treatment facilities and personnel are available."...

Under the circumstances, no legal support exists for plaintiff's contention that the Attorney General or his "John Doe Subordinates" could be liable for any purported lack of Massachusetts legal materials at federal institutions or for the denial of access to the courts flowing therefrom.

*Brown v. Smith,* 580 F.Supp. 1576, 1577–1579 (M.D.Pa.1984). The court likewise dismissed the complaint as to the remaining state defendants, the former and current Massachusetts Commissioners of Corrections, on the simple finding that the plaintiff was not denied access to the courts.

■ The thrust of these cases is, as indicated above, that an action for denial of access to in-state courts in the wake of some transfer to an out-of-state facility cannot be maintained against a party who had no personal involvement in or knowledge of the alleged constitutional violation. Accordingly, under circumstances like the present, it is clear that the proper defendant, if any, must be the director or administrator of corrections of the sending state or his or her supervisors—that is, the individuals most directly responsible for the transfer of prisoners pursuant to the interstate compact or agreement to which they are presumably signatories.

■ Despite the plaintiff's apparent suggestion that the warden of the institution from which the plaintiff was transferred "has access to the Interstate Compact," Plaintiff's *Letter* (October 11, 1983), there is no allegation in the complaint that this defendant was personally involved in the decision to transfer the plaintiff under circumstances that would prevent him from pursuing his appeals in the Wisconsin state courts. In addition, the defendant was not the Wisconsin signatory to the interstate transfer agreement between Wisconsin and Minnesota corrections officers.

Indeed, if the plaintiff's claims of denial of access have any merit at all—an issue the court does not reach today—he is well-advised to look to the precedent cited *supra* at 9–12 to identify a proper party-defendant. As the plaintiff's action is now framed, however, it does not state a claim against a defendant who might be held liable under 42 U.S.C. § 1983.

Because the Court finds this a sufficient basis upon which to dismiss this matter in toto, it will not address at this time the other arguments advanced by the defendant in support of his motion, *see supra* at 5–6. At the same time, the Court will permit the plaintiff to reopen his case as to a proper party-defendant if and only if he so petitions the Court within thirty (30) days of this order.

**CONCLUSION**

Accordingly, for the reasons articulated above, the Court hereby DISMISSES this action for failure to state a claim against the defendant upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This dismissal is subject to the plaintiff's petitioning to reopen as to a proper party defendant only within thirty (30) days of today's order, consistent with the findings set forth herein.