**Kip KIVELA, Petitioner,**

v.

**UNITED STATES ATTORNEY GENERAL: Director of the United States Bureau of Prisons, Respondents.**

**No. 81 Civ. 5350.**

United States District Court,
S. D. New York.

Oct. 15, 1981.

Kip Kivela, petitioner, pro se.

John S. Martin, Jr., U.S. Atty., for the S. D. of New York, New York City, for respondents; Leona Sharpe, Asst. U.S. Atty., New York City, of counsel.

EDWARD WEINFELD, District Judge.

Petitioner, now confined to the Federal Metropolitan Correction Center, New York City, upon his transfer from Vermont pursuant to the provisions of 18 U.S.C. § 5003 [1]

---

1. 18 U.S.C. § 5003 provides in pertinent part:

(a) The Attorney General, when the Director shall certify that proper and adequate treatment facilities and personnel are available, is hereby authorized to contract with the proper officials of a State or Territory for the custody, care, subsistence, education, treatment, and training of persons convicted of criminal offenses in the courts of such State or Territory: *Provided,* That any such contract shall provide for reimbursing the United States in full for all costs or other expenses involved.

seeks a writ of habeas corpus which in effect would nullify the transfer and direct his return to the custody of the Correction Department of the State of Vermont. He contends that his transfer and his confinement in a federal institution violates his right to due process of law, to the equal protection of the laws, and meaningful access to the courts under the Federal Constitution.

Petitioner's application for the writ and his affidavit in support of a preliminary injunction to restrain his transfer omits reference to the basis for his imprisonment in the State of Vermont. The respondents, in opposing this application, have supplied the information. Petitioner, at the time of his transfer into the custody of the Federal Bureau of Prisons, was under sentence in the State of Vermont for the following crimes:

(1) manslaughter—12–15 years;

(2) assault and robbery w/dangerous weapon—11–15 years;

(3) kidnapping—9–15 years;

(4) aiding and concealment of stolen property (two separate and unrelated charges)—4–8 years.

All sentences are to run concurrently with a minimum release date with good time of 10/20/89 and without good time of 10/24/92; maximum release date with good time of 02/02/92 and without good time of 10/24/95. The manslaughter offense involved beating to death a Burlington, Vermont man with a hammer and robbing the victim of his wallet. The original charge was murder in the first degree but was reduced to the manslaughter charge. The kidnapping charge concerned another Burlington, Vermont man who was bound, gagged and left in an attic.

.    .    .    .    .

(c) Unless otherwise specifically provided in the contract, a person committed to the Attorney General hereunder shall be subject to all the provisions of law and regulations applicable to persons committed for violations of laws of the United States not inconsistent with the sentence imposed.

On October 25, 1980, the day following the incident which led to the manslaughter charge, petitioner was confined to the Chittenden Community Correctional Center, Vermont. On April 29, 1981, he was transferred on an emergency basis to the St. Albans Correctional Facility, Vermont. At both institutions, he accumulated numerous disciplinary infractions, and as a result, it was recommended[2] that the petitioner be transferred to an out-of-state facility on the grounds that:

(1) all in-state treatment and rehabilitation programs available were unsuitable for petitioner; and

(2) there are no Vermont facilities with adequate security to deal with petitioner's assaultive and threatening behavior over an extended period and that his conduct poses a serious threat to the safety and security of Vermont facilities and the community at large.

On July 19, 1981, after state proceedings[3] not challenged here, Vermont, as authorized by its statute for the transfer of its prisoners to the federal prison system,[4] entered into the contract with the federal authorities pursuant to 18 U.S.C. § 5003 whereby petitioner was transferred to the Federal Bureau of Prisons for the service of his state-imposed sentences. Recently the Supreme Court upheld § 5003 as a broad charter authorizing states to transfer their prisoners to the Federal Bureau of Prisons under appropriate circumstances for their "custody, care, subsistence, education, treatment and training,"[5] provided that the Federal Government is reimbursed in full for all expenses involved.

Petitioner, in a discursive and argumentative petition, presents four general claims in urging his re-transfer to the custody of Vermont:

**2.** See Vermont Department of Correction, Manual, Out of State Transfers, Policy No. 891.

**3.** Vt.Stat.Ann. tit. 28, § 852 (1980).

**4.** Vt.Stat.Ann. tit. 28, § 706 (1980).

**5.** Howe v. Smith, —— U.S. ——, ——, 101 S.Ct. 2468, 2471, 69 L.Ed.2d 171 (1981).

(1) that by confinement in a federal institution for service of his sentence, he will be denied certain benefits that are available to Vermont prisoners serving terms equal to or longer than that imposed upon him thereby denying him the equal protection of the laws;

(2) that in his language he "is placed at a distinct disadvantage due to the fact that he is a very youthful appearing boy [he will be 20 years of age in November 1981] with delicate and effeminate good looks who will be subject to physical pressure, homosexual rape attempts and perhaps even life threatening situations due to his inexperience and gentle physical characteristics," whereas while a Vermont prisoner, he was under no such duress;

(3) that his confinement in a federal prison removed from Vermont will deny him access to Vermont law books and access to Vermont courts; and

(4) that he will be housed in a facility far removed from his home and friends rendering virtually impossible any visits from his family or friends.

■ The Court finds that none of petitioner's claims are of substance or in violation of his federal constitutional rights. First, as to his claim that as a Vermont prisoner he will not be eligible for any community programming such as halfway houses, work release, study release, furlough and good time credits, the fact is that under § 5003 he is "subject to all the provisions of law and regulations applicable to prisoners committed for violations of laws of the United States not inconsistent with the sentence imposed." The Vermont law authorizing transfers of prisoners to federal facilities contains a similar provision.[6] It was entirely within the competence of the Vermont legislature to authorize the place of confinement of those duly convicted and

to provide, as set forth in the state statute, that its prisoners upon transfer to a federal institution were subject to the same "law, rules, regulations, and procedures applicable to inmates committed for violations of the laws of the United States, not inconsistent with the sentence imposed."[7] Thus petitioner will have the benefit of the federal laws pertaining to federal prisoners and where inconsistent with his Vermont sentence, the benefit of the terms of that sentence. Under § 5003, the petitioner will earn statutory good time and will be eligible to earn meritorious good time as prescribed by Vermont law.[8]

■ In *Rebideau v. Stoneman*,[9] Judge Holden of the District Court of Vermont, writing for a statutory three-judge court, found that there is substantially no difference between Vermont's work release and furlough programs and the equivalent federal programs—that the state program is modeled in large measure on the federal program. These have been outlined in great detail in *Rebideau* and need not be repeated here. While petitioner generally alleges he would be deprived of the benefits of the state program, he has not specified in what particular respect the federal program disadvantages him. Even if it could be contended that the conditions in the transferee institution were less favorable to petitioner, it would not give rise to a constitutional claim of denial of equal protection of the laws or denial of due process. A prisoner sentenced to imprisonment under a valid judgment of conviction is not entitled to serve his sentence in any particular place of confinement or entitled to protect himself against transfer from one institution to another where confinement may be more onerous as long as the conditions of confinement do not otherwise violate his constitu-

---

**6.** Vt.Stat.Ann. tit. 28, § 706 (1980).

**7.** Vt.Stat.Ann. tit. 28, § 706(b)(1980).

**8.** *See* Affidavit of David R. Ewsig, Northeast Regional Counsel, Federal Bureau of Prisons, at ¶ 6.

**9.** 398 F.Supp. 805 (D.Vt.1975), *aff'd per curiam,* 575 F.2d 31 (2d Cir. 1978).

tional rights.[10] *A fortiori,* where the conditions at the transferee prison are substantially as favorable, there can be no claim of impairment of constitutional rights.

■ As to his claim that because of his youthful and attractive appearance he is likely to be subject to attack at Lewisburg, Pennsylvania Penitentiary where he believes he will be confined based upon his own computation that he is a level five security designee, the representative of the Federal Bureau of Prisons disputes this. He states that contrary to petitioner's allegation, Lewisburg has not been designated as his place of confinement; that although the State of Vermont classified petitioner as a maximum custody inmate, no final decision has been made by the federal authorities and that petitioner may be sent to a level four institution, medium custody, rather than to a level five penitentiary, such as Lewisburg. In any event, whatever the ultimate decision, the matter is one that rests in the discretion of the Federal Bureau of Prisons. The officials of that Bureau further state that upon petitioner's transfer to a designated institution, consistent with the Bureau's regular policy, he will not be placed into the general population until and unless it is the opinion of the staff that he can function in the general population without undue risk; if not, he will be transferred to another institution where he could function in the general population. Thus far, other than petitioner's apprehension that he is likely to be attacked, no incident has occurred during his confinement at the Metropolitan Correction Center. His expressed concern is purely conjectural as to what may occur in the future upon his transfer to a designated institution. Upon his confinement to a designated institution, the authorities will make an informed judgment as to the need for protec-

tion, if any. There will be available to petitioner at whatever institution may be designated, an administrative procedure whereby he may present grievances and complaints.[11]

■ Petitioner makes the further claim that while confined in a federal institution he is denied access to Vermont State law books which he requires in connection with a pending action in the courts of Vermont or actions about to be commenced there by him. It is hardly to be expected, nor is it required, that every federal penal institution have in its library the law books of each of the fifty states of the Union. Indeed, there are many courts throughout the United States, federal and state, which do not maintain such elaborate libraries. Petitioner is not entitled to a private law library. He is entitled to the use of adequate library facilities or adequate legal assistance.[12] Federal regulations provide for legal reference materials, law libraries, typewriters and other means to facilitate access to courts.[13] In addition, the respondents state that the Vermont Department of Correction will be responsible for providing petitioner either access to state law material or access to counsel;[14] moreover, if his presence is required in that state, under an appropriate showing, a writ ad testificandum is available.

■ Petitioner also claims that he will be housed in a facility far from his home thus "rendering virtually impossible any visits from his family and friends." However, there is no constitutional right in favor of a prisoner to have his place of confinement close by or proximate to the location of his friends or relatives or to have any particular place designated for his confinement. Prison officials have discretion to effect a transfer of a prisoner from his

---

**10.** *Cf. Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976); *see also Montanye v. Haymes,* 427 U.S. 236, 242–43, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976).

**11.** 28 C.F.R. § 542.

**12.** *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977).

**13.** *Rebideau v. Stoneman, supra,* 398 F.Supp. at 810 (citing Bureau of Prisons Policy Statement 2001.2B(4), (5), (6) and (7)).

**14.** Affidavit of David R. Eswig, *supra,* at ¶ 7.

place of confinement for whatever reason or for no reason and the exercise of that discretion implicates neither the due process or equal protection claims.[15]

The application for the appointment of an attorney is denied. The motion for a stay of transfer is denied and the petition for a writ of habeas corpus is dismissed.

So ordered.

---

15. *Cf. Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Montanye v.* *Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976).