**Efrid BROWN, Jr., Plaintiff,**

v.

**William F. SMITH, et al., Defendants.**

**Civ. A. No. 81–1256.**

United States District Court,
M.D. Pennsylvania.

March 12, 1984.

Efrid Brown, Jr., pro se.

Robert J. Nolan, Asst. U.S. Atty., Scranton, Pa., William D. Luzier, Jr., Asst. Atty. Gen., Boston, Mass., for federal defendants Smith, U.S. Atty. Gen. and Joe Doe subordinates.

## MEMORANDUM

CALDWELL, District Judge.

### I. Introduction

Before the court for disposition are two motions filed on behalf of defendants in this case. The federal defendants have filed a motion to dismiss and the remaining state defendants have filed a summary judgment motion.[1] Plaintiff has filed timely opposition to these motions. Upon review of the entire record we have concluded that the federal defendants' dismissal motion must be granted. Moreover, since no genuine issue of material fact exists with regard to the summary judgment motion, the state defendants are entitled to judgment as a matter of law pursuant to Federal Rule of Civil Procedure 56.

### II. Background

On November 2, 1981, plaintiff, then an inmate at the United States Penitentiary, Lewisburg, Pennsylvania, filed this action pursuant to 28 U.S.C. § 1331. Four defendants plus their "John Doe Subordinates" were named in the complaint: William F. Smith, Attorney General of the United States; Edward King, Governor of Massachusetts; Michael Fair, Massachu-

setts Commissioner of Corrections; and Louis Berman, a predecessor of Fair.

The claims in plaintiff's complaint were twofold: denial of his rights of access to an adequate law library and to the courts. Essentially plaintiff alleged that his transfer on January 5, 1981, from state custody at the Massachusetts Correctional Institution, Walpole, Massachusetts (MCI–Walpole) and ultimately into federal custody pursuant to 18 U.S.C. § 5003 led to the violation of his aforesaid rights. Plaintiff contended that because appeals were ongoing in the Massachusetts courts on his state conviction for murder and because he was involved in several matters being litigated in federal court, he was unable to prepare these matters properly once he was in federal custody in Pennsylvania. Brown subsequently was transferred to the federal penitentiary at Marion, Illinois, and in December, 1983, was returned to MCI-Walpole.

### III. The Federal Defendants' Dismissal Motion

The motion filed on behalf of the federal defendants alleges that the burden is on the state (in this case, Massachusetts) rather than the federal authorities to provide state law books and/or counsel to represent plaintiff in his state appeals. Moreover, the federal defendants assert that by bringing an action against them individually, plaintiff cannot prevail unless he can demonstrate that defendants took some action or personally knew about the circumstances giving rise to plaintiff's problems. Both points raised are persuasive, but because we find the first one dispositive of defendants' motion, we shall confine our discussion to it and need not reach or address the second.

■ The law seems clear, at least in the Middle District of Pennsylvania and the Third Circuit, that when a transfer occurs from state custody into a federal institution located in another state the transferring

---

**1.** Defendant King was dismissed from this case in a memorandum and order filed on Novem-

ber 1, 1982, granting his motion to dismiss.

state is responsible for providing an adequate law library *or* adequate aid from persons trained in the law of the transferring state. For example, in *Clency v. Attorney General for the State of Alabama, et al.*, No. 82–0178 (M.D.Pa. Nov. 30, 1982), a habeas corpus case, petitioner was an Alabama prisoner who had been transferred into federal custody at Lewisburg. Even though counsel had been appointed to represent him in the Alabama courts, petitioner argued that he was constitutionally entitled to have access to Alabama law books at the federal facility. In dismissing his petition, the court stated that "[w]hile petitioner may prefer law books to appointed counsel, the decision as to which form of assistance will be provided lies with the state." *Id.* at 2. The court continued by observing,

> [I]t is not feasible for the Bureau of Prisons to provide or require state officials to provide legal materials for state prisoners incarcerated in federal institutions. The primary reason for this is that it would create an enormous burden mindful of the number of states and territories which have contracted to have their prisoners housed by the Bureau of Prisons.... it can hardly be expected that each penitentiary contain legal materials for each of the fifty states....

*Id.* at 3. *See also Kivela v. United States Attorney General*, 523 F.Supp. 1321, 1325 (S.D.N.Y.1981).

■ Basically the cases establish that the federal authorities are not responsible for providing state legal materials in federal penal institutions. The arrangement under which state prisoners are transferred into federal facilities is a contractual one effected under 18 U.S.C. § 5003. The role of the Attorney General, as delineated in subsection (a) of the statute, is to enter into transfer contracts with appropriate state officials after the Director certifies that "proper and adequate treatment facilities and personnel are available." In *Howe v. Smith*, 452 U.S. 473, 101 S.Ct. 2468, 69 L.Ed.2d 171 (1981) the petitioner argued that transfers could be accomplished only for identified specialized treatment. In up-

holding decisions below that rejected petitioner's position, the seven member majority opinion of the Supreme Court stated,

> The petitioner's reading of the statute strains the plain meaning of its language. The act of certification by the Director is nothing more than the starting point in the process of contractual negotiation envisioned by § 5003(a). Absent surplus capacity in the federal system, discussions between federal and state authorities regarding the transfer of state prisoners to federal facilities would be pointless. Once the Director certifies that a surplus capacity exists— that is, that there is room for more inmates—the transfer becomes a possibility. The certification clause cannot be read as requiring any more than that federal facilities and personnel must be available to handle whatever prisoners are received.
>
> . . . .
>
> ... The certification requirement is simply a housekeeping measure designed to ensure that the federal system has the capacity to absorb state prisoners. Nothing in the language of § 5003(a) restricts or limits the use of federal prison facilities to those state prisoners who are in need of some particular treatment.

452 U.S. 481–82, 101 S.Ct. 2474, 69 L.Ed.2d 179–80. In the present matter plaintiff has indicated that he does not challenge his transfer and we have concluded that even if he should attempt to do so, under the holding in *Olim v. Wakinekona*, —— U.S. ——, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983) he could not succeed. *See also Garfield v. Davis*, 566 F.Supp. 1069, 1074 (E.D.Pa. 1983). As applied to this case, legal authority recognizes that the transfer itself was permissible and that state prisoners may be transferred into federal custody outside the state of conviction without bringing into play any protected liberty interest. Federal officials under 18 U.S.C. § 5003(a) have unfettered authority to accept state prisoners into the federal system as long as space exists. Under the circumstances, no legal support exists for plain-

tiff's contention that the Attorney General or his "John Doe Subordinates" could be liable for any purported lack of Massachusetts legal materials at federal institutions or for the denial of access to the courts flowing therefrom.

IV. The State Defendants' Motion for Summary Judgment

The Massachusetts defendants remaining in this case are former and current Commissioners of Corrections. These defendants have pointed out, and the exhibits they have submitted confirm, that plaintiff was not denied access to the courts. He was provided with appointed counsel to pursue appeals of his murder conviction in Massachusetts as mandated by the Supreme Court decision in *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). As the Massachusetts defendants noted in their brief, when Brown was transferred he was a party in three civil actions filed in federal district court: *Clinkscales v. Hall*, No. 76–0578–M (D.Mass., filed February 11, 1976), *Nelson v. King*, No. 79–1569–G (D.Mass., filed August 9, 1979), and *Sabree v. Ponte*, No. 80–554–Z (D.Mass., filed March 26, 1980).

The *Clinkscales* case was dismissed as to two "John Doe" defendants on February 9, 1977, and docket entries reflect that Brown sent a letter later the same month opposing the dismissal motion. Nothing further was done by Brown in the more than four years remaining until he was transferred. The *Nelson* case was dismissed on March 29, 1983, for want of prosecution. The *Sabree* case was dismissed on May 11, 1981, upon the recommendations of a United States Magistrate that the allegations of the petitioners did not state a proper habeas corpus claim. An appeal was taken, and on October 26, 1981, the United States Court of Appeals for the First Circuit affirmed the decision of the district court. Thus the *Sabree* case had been disposed of prior to Brown's transfer. Moreover, our examination of the docket sheets reveals that coun-

sel was appointed in both the *Sabree* and *Nelson* cases, although the appointment was terminated by the court in the latter matter. At any rate, Brown would have had access to the Federal Supplement, Federal Reporter, and other federal materials at a federal institution. Therefore, his inadequate law library claims must fail.

His contention that his transfer into federal custody rendered him unable to pursue state appeals of his murder conviction is likewise unpersuasive. Plaintiff's attachment to his memorandum of a report regarding his conviction, which report was prepared by several attorneys for Amnesty International, does not strengthen plaintiff's position. The report concluded that sufficient evidence existed to convict defendant at his second trial and that the Massachusetts courts had given Brown a fair trial. The report further noted that no appeal was taken from the second conviction.[2] Regardless of the report, however, and its failure to support Brown's arguments on the issues of the present case, we find that Brown's memorandum does not counter the observations made by the state defendants with regard to the three federal court matters in which he was involved nor does he refute the fact that no appeal has been taken from his second conviction. Accordingly, since we find that no genuine issue of material fact exists, the Massachusetts defendants' motion for summary judgment shall be granted.

V. Conclusion

An appropriate accompanying order shall be filed granting the federal defendants' motion to dismiss and the remaining state defendants' motion for summary judgment.

---

**2.** Brown and his co-defendants had won a new trial after their initial conviction as a result of errors in the jury charge in the first trial. *Com-* *monwealth v. Enfrid [sic] Brown, Jr., & others (and five companion cases)*, 367 Mass. 24, 323 N.E.2d 902 (1975).