Stanton T. STORY, 42571–066, Plaintiff,

v.

Warden MORGAN and Captain Stickman, Defendants.

Civ. A. No. 91–2039.

United States District Court, W.D. Pennsylvania.

Feb. 3, 1992.

Stanton T. Story, pro se.

Warden Morgan and Captain Stickman, Terre Haute, Ind., for defendants.

MEMORANDUM OPINION

LEWIS, District Judge.

By a Report and Recommendation dated November 27, 1991, United States Magistrate Judge Robert C. Mitchell recommended the dismissal of Stanton T. Story's *in forma pauperis* complaint alleging a civil rights violation under 42 U.S.C. § 1983. Story filed an Objection to the Magistrate's Report and Recommendation dated December 4, 1991. After a careful and independent review of the file and the

applicable case law, and cognizant of the latitude due *pro se* litigants, the court declines to follow the Report and Recommendation. The case will be referred back to the Magistrate Judge for proceedings consistent with the following opinion.

The Court of Common Pleas of Allegheny County imposed a life sentence on Stanton T. Story some years ago. Story was held in the State Correctional Institution at Pittsburgh until March 7, 1991, when he was moved temporarily to the Federal Prison at Lewisburg on his way to the Federal Correctional Facility at Terre Haute, Indiana. Story asserts that he has been denied his constitutional rights to due process and access to the courts as a result of this interstate transfer to the federal system and the conditions of his confinement in Indiana since his arrival on March 13, 1991. More specifically, his complaint states that:

> Since arriving here at the Federal Prison in Terre Haute, IN on March 13, 1991 I have been unable to follow my case or work on my state case in the courts because Federal Prisons don't have Penna. Criminal Code Statutes books. At this time I have an open case in court but lack the opportunity to exert my right to access to the courts and due process because of the absence of Pa. law books and my legal materials.

In his prayer for relief, Story seeks a transfer back to the State Correctional Institution at Pittsburgh.

■ This court may dismiss an *in forma pauperis* action if it is frivolous. *See* 28 U.S.C. § 1915(d); *Corgain v. Miller,* 708 F.2d 1241, 1247 (7th Cir.1983); *McGarrity v. Wilson,* 368 F.2d 677, 678 (9th Cir.1966). An action is frivolous, in this context, if the petitioner can make no rational argument in law or fact to support his claim for relief. *Pembrook v. Wilson,* 370 F.2d 37, 39 (9th Cir.1966); *Ragan v. Cox,* 305 F.2d 58, 60 (10th Cir.1962). Therefore, this court should dismiss Story's complaint only if no rational argument may be made that the facts set forth above state a cause of action under the provisions of § 1983.[1]

The Report and Recommendation is correct as far as it goes; the interstate transfer of Story does not invoke the Fourteenth Amendment due process clause because a prisoner has no federal liberty interest in being housed in a particular institution. The Report and Recommendation does not, however, consider whether Story may have a protected liberty interest created by the Commonwealth of Pennsylvania. Such a state-created liberty interest, if it exists, would place a substantive limitation on official discretion and may provide a meritorious ground for relief under § 1983. Further, by focusing exclusively on the constitutionality of the transfer itself, the Report and Recommendation ignores the alleged violation of Story's constitutional right of access to the courts, the gravamen of his complaint.

## I. *The Federal Liberty Interest*

■ The Fourteenth Amendment prohibits the government from depriving a person of life, liberty, or property without due process of law. The United States Supreme Court has made it clear that the due process clause provides constitutional safeguards prior to conviction, but, upon a valid conviction, it does not provide a federal liberty interest guaranteeing housing in a particular penal institution or providing protection against transfer from one institution to another within the state prison system. *Meachum v. Fano,* 427 U.S. 215, 224–225, 96 S.Ct. 2532, 2538–2539, 49 L.Ed.2d 451 (1976); *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976).

After *Meachum* and *Montanye,* both of which involved the transfer of a prisoner from one institution to another within a

1. Section 1983 reads as follows:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

single state's prison system, the Courts of Appeals split on whether their holdings extended to interstate prison transfers as well. In his Objection to the Magistrate's Report and Recommendation, Story attempts to distinguish intrastate from interstate transfers and argues that the latter does implicate a federal liberty interest. The Supreme Court has settled the split among the Circuits and has flatly rejected Story's position. *Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983). In *Olim,* the transfer of a state prisoner from Hawaii to California was held not to violate the due process clause. The *Olim* Court pointed to statutes authorizing the transfer of a state prisoner to a federal prison in another state or from one state prison system to another as authority for its conclusion that "it is neither unreasonable nor unusual for an inmate to serve practically his entire sentence in a State other than the one in which he was convicted and sentenced, or to be transferred to an out-of-state prison after serving a portion of his sentence in his home State." *Olim,* 461 U.S. at 247, 103 S.Ct. at 1746. Prior to *Olim,* the Court of Appeals for the Third Circuit had also held that *Meachum* and *Montanye* required the conclusion that a prisoner's federal due process rights are not implicated simply because he is transferred a considerable distance from his place of original incarceration. *Beshaw v. Fenton,* 635 F.2d 239 (3d Cir.1980), *cert. denied* 453 U.S. 912, 101 S.Ct. 3145, 69 L.Ed.2d 995 (1981) (transfer from Vermont state institution to federal institutions in Virginia, Wisconsin, Illinois, Pennsylvania and Indiana); *Ali v. Gibson,* 631 F.2d 1126 (3d Cir.1980), *cert. denied* 449 U.S. 1129, 101 S.Ct. 951, 67 L.Ed.2d 117 (1981) (transfer from Virgin Islands to mainland United States).

■ Therefore, to the extent that Story's Objection to the Magistrate's Report and Recommendation is based on an argument that his transfer from a Pennsylvania state penal institution to an Indiana federal penal institution infringed a federally protected liberty interest, it is rejected. No such interest exists.

Prior to dismissing Story's § 1983 claim as frivolous, however, the Supreme Court requires that this court consider (1) whether the Commonwealth of Pennsylvania has created such a right, and (2) whether his new conditions of confinement otherwise violate the Constitution. *Montanye,* 427 U.S. at 242, 96 S.Ct. at 2547; *Olim,* 461 U.S. at 248 (fn. 9), 103 S.Ct. at 1747 (fn. 9). The Magistrate Judge in this case must complete these two analytical steps before reaching a conclusion regarding the merits of Story's complaint. The legal principles required for this analysis are set out below.

## II. *The State–Created Interest*

In each of the Supreme Court decisions cited above, the Court performed an analysis of applicable state law in order to determine whether the transferred prisoner may possess a state-created entitlement to remain in the prison to which he was initially assigned. *Olim,* 461 U.S. at 249, 103 S.Ct. at 1747; *Meachum,* 427 U.S. at 226, 96 S.Ct. at 2539; *Montanye,* 427 U.S. at 243, 96 S.Ct. at 2547. In each of these cases, the Court ultimately decided no such state-created liberty interest existed, and therefore, no basis for invoking the procedural protections of the due process clause existed either.

■ A state creates a protected liberty interest if it places substantive limitations on official discretion. *Olim,* 461 U.S. at 249, 103 S.Ct. at 1747. In order to make this showing, an inmate must demonstrate "that particularized standards or criteria guide the State's decisionmakers." *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 467, 101 S.Ct. 2460, 2465, 69 L.Ed.2d 158 (1981). On the other hand, the state does not create a constitutionally protected liberty interest if the state decisionmaker is not "required to base its decisions on objective and defined criteria," but instead "can deny the requested relief for any constitutionally permissible reason or for no reason at all." *Id.* at 466–467, 101 S.Ct. at 2465–2466. The Supreme Court has looked to state statutes and internal prison rules and regulations in its efforts to determine whether such substantive

limitations on official discretion exist. A similar inquiry is required here.

## III. *The Right of Access to the Courts*

■ Even if Story fails to establish a federally-protected liberty interest (which he has) and a state-created liberty interest (which remains to be seen), he may still have a viable cause of action arising from an independent violation of the Constitution. That is, even if the prison transfer itself proves to be constitutionally permissible under the Fourteenth Amendment, the transfer may become impermissible if its effect is to violate a fundamental constitutional right of Story. Potentially, one such fundamental right may be found within Story's complaint: the right of access to the courts.

It is well-established that prisoners do not check their constitutional rights at the prison gate along with their other personal belongings. *Wolff v. McDonnell,* 418 U.S. 539, 555–556, 94 S.Ct. 2963, 2974–2975, 41 L.Ed.2d 935 (1974) ("There is no iron curtain drawn between the Constitution and the prisons of this country"). The right of access to the courts is fundamental, if not preeminent, among those rights retained by prisoners. *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Wolff,* 418 U.S. at 556, 94 S.Ct. at 2974; *Ex parte Hull,* 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941); *Beshaw v. Fenton,* 635 F.2d 239.

*Bounds* represents the Supreme Court's most thorough analysis of what constitutes adequate, effective and meaningful access to the courts. The Court held "that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds,* 430 U.S. at 828, 97 S.Ct. at 1498. Although this holding may appear rather specific, the Court went on to state that "while adequate law libraries are one constitutionally acceptable method to assure meaningful access to the courts, our decision here ... does not foreclose alternative means to achieve that goal," and that "a legal access program need not include any particular element we have discussed, and we encourage local experimentation." *Id.* at 830 and 832, 97 S.Ct. at 1499 and 1500. Therefore, the *Bounds* Court declined to establish a bright line test for determining when a state has fulfilled its duty to provide meaningful access to the courts, and discussed a range of constitutionally acceptable alternatives.[2]

Although it is rather unclear which particular legal services may pass constitutional muster, it is clear in the Third Circuit that "a local prison authority remains responsible for the maintenance of its prisoners after they have been sent to a federal facility, and this responsibility includes access to the locality's law books." *Benjamin v. Potter,* 635 F.Supp. 243 (D. Virgin Islands 1986), *aff'd.* (per curiam) 838 F.2d 1205 (3d Cir.1988) (citations and footnote omitted); *see also Brown v. Smith,* 580 F.Supp. 1576 (M.D.Pa.1984). In *Benjamin,* the plaintiffs, who were prisoners convicted under the criminal statutes of the Virgin Islands and incarcerated in federal prisons, complained that they lacked access to appropriate legal research materials of the territory. The court, recognizing "the serious right at stake here," granted summary judgment in favor of the plaintiffs and provided the Government of the Virgin Islands with "90 days to submit a proposal remedying the substantial hurdle that these prisoners currently face when researching a possible cause of action under Virgin Islands law." *Benjamin,* 635 F.Supp. at 245. The *Benjamin* court went on to state that if the government failed to propose an innovative remedy to the constitutional problem, it would fashion the solution. *Id.*[3]

2. An excellent discussion of the range of legal services made available by Massachusetts and Washington to its inmates transferred out of state may be found in *Corgain v. Miller,* 708 F.2d at 1247–1251.

3. Story's complaint mentions a parallel action presently pending in federal court in Indiana. Story avers that the defendant in that case is Warden Kindt of the Federal Correctional Facility in Terre Haute, Indiana. The Report

Story's complaint in this action would appear to name the appropriate defendants and to make allegations which, if proved, may support a legally cognizable claim for infringement of his right of access to the courts. The current posture of the case precludes an ultimate decision concerning whether Story's right of access has actually been abridged. A decision on the merits will only be possible after the Magistrate Judge has considered what legal resources the Commonwealth of Pennsylvania has made available to Story in Indiana.

and Recommendation concludes that the existence of such an action makes it "apparent that there are adequate means available to him for gaining redress." This conclusion would appear to be unfounded. The *Benjamin* and *Brown* decisions make it quite clear that when a state prisoner is transferred out of state to a federal prison, the transferring state, and not the federal government, bears the responsibility for safeguarding the prisoner's right of access to the courts. In *Benjamin*, for example, the United States, a named defendant, was dismissed on summary judgment because the sole appropriate target for a denial of access claim was the Government of the Virgin Islands. *Benjamin*, 635 F.Supp. at 244–45. Other courts—stating that it is neither required nor feasible for the federal Bureau of Prisons to maintain penitentiary libraries containing legal materials for each of the fifty states—have reached similar conclusions. *Brown*, 580 F.Supp. at 1578; *Kivela v. U.S. Attorney General*, 523 F.Supp. 1321, 1325 (S.D.N.Y.1981), *aff'd.* (per curiam) 688 F.2d 815 (2d Cir.1982).