**Francis HANNON, Plaintiff**

v.

**Peter ALLEN, Defendant.**

**No. CIV.A. 02–10582MLW.**

United States District Court,
D. Massachusetts.

Jan. 22, 2003.

Valeriano Diviacchi, Diviacchi Law Office, Boston, MA, for Francis Hannon, Plaintiff.

David J. Rentsch, Department of Correction, Legal Division, Boston, MA, for Peter Allen, Superintendent, Defendant.

### MEMORANDUM AND ORDER

WOLF, District Judge.

### I. SUMMARY

The plaintiff, Francis Hannon, was convicted of murder by a Pennsylvania state court in 1978. His direct appeal was ultimately denied in 1981. In 1991, Hannon filed a petition for post-conviction relief based on newly discovered exculpatory evidence.

Hannon has been moved from a prison in Pennsylvania to several other prisons pursuant to the Interstate Corrections Compact. *See generally* M.G.L. ch. 125 App., § 2–1. He is currently incarcerated at MCI–Cedar Junction in South Walpole, Massachusetts. The defendant, Peter Allen, is the superintendent of that facility.

Hannon filed a verified complaint in this court alleging that Allen has violated 42 U.S.C. §§ 1983 and 1988 by denying the plaintiff access to Pennsylvania case law and research materials. Hannon seeks declaratory and injunctive relief, attorney's fees and costs. Hannon also filed a motion for preliminary injunction. The court scheduled a hearing on the motion for October 18, 2002 at 11:30 a.m. Counsel for Allen informed the court by letter that he would be unable to attend the hearing due to a conflict with a criminal jury trial earlier that week. In the letter, counsel for Hannon represented that the court could decide the preliminary injunction motion on the parties' submissions.

The court has carefully reviewed the plaintiff's motion and the defendant's opposition, as well as the complaint and answer. For the reasons described below, Hannon's Motion for Preliminary Injunction is being denied.

### II. FACTUAL BACKGROUND

The following facts appear to be undisputed at this stage in the proceedings: Hannon was convicted of murder under the laws of Pennsylvania in 1978. The conviction was affirmed in 1981. In 1991, a Pennsylvania court appointed an attorney ("Deady") to represent Hannon on a post-conviction relief petition. Attorney Deady neglected the case, failed to return Hannon's papers to him, and was disbarred. A new court-appointed lawyer was assigned to Hannon in 1997. The Pennsylvania DOC transferred Hannon to various prisons throughout the country, beginning in the late 1990's, pursuant to the Interstate Corrections Compact. He was sent to MCI–Cedar Junction in December 2001. MCI–Cedar Junction does not provide Pennsylvania case law or research material in its library.

Def.'s Memo. at 2 (citations to Complaint omitted). It is also undisputed that Allen is the superintendent of MCI–Cedar Junction and that "he is the state official responsible for the supervision, operation, and care of that facility." Answer ¶ 2.

In his complaint, Hannon does not identify a particular case or claim that he is pursuing for which he needs Pennsylvania legal materials. In his Motion for Preliminary Injunction and accompanying affidavit, however, Hannon identifies two matters for which he claims to need Pennsylvania legal materials: (1) his peti-

tion for post-conviction relief; and (2) an ongoing grievance against the Commonwealth of Pennsylvania pertaining to legal materials lost during shipment as Hannon was being transferred from one prison to another. *See* Pl.'s Memo. at 3–4; Hannon Aff. ¶¶ 1–2. Apparently, these lost legal materials relate directly to Hannon's petition for post-conviction relief. *See* Def.'s Opp. Ex. 2 at 1.

Hannon asserts that he does not have legal counsel for either of these matters despite valiant efforts on his part to secure legal assistance. *See* Pl.'s Memo. at 4; Hannon Aff. ¶ 1. Allen, referring to correspondence between Hannon and the Pennsylvania DOC, states that Hannon claims to be involved in ten *pro se* legal matters. *See* Def.'s Opp. at 4. Allen disputes whether Hannon is really without representation in any case where representation would make a difference. *See id.* at 3–5. However, Allen does not address Hannon's claim that he is without representation with regard to his case concerning missing legal materials. Furthermore, Allen does not provide an affidavit authenticating the exhibits to his Opposition or otherwise supporting his assertion that Hannon is represented by counsel. Nevertheless, for purposes of ruling on this motion, the court is considering these exhibits.

Finally, Hannon alleges that the attorney in his criminal appeal is not providing adequate representation. *See* Hannon Aff. ¶ 1.

## III. ANALYSIS

The standard for obtaining a preliminary injunction is familiar. *Ocean Spray Cranberries, Inc. v. Pepsico, Inc.*, 160 F.3d 58, 60 (1st Cir.1998). The burden of proof is on the plaintiff. *Id.; Equal Employment Opportunity Comm'n v. Astra USA, Inc.*, 94 F.3d 738, 742 (1st Cir.1996). The court is required to weigh four factors. *Ross–Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 15 (1st Cir.1996); *Astra*, 94 F.3d at 742. The first is whether the plaintiff has shown a likelihood of success on the merits. *Ross–Simons*, 102 F.3d at 15. The second is whether the plaintiff has established an imminent threat of irreparable harm in the absence of a preliminary injunction. *Id.* The court is also required to balance the hardship to the plaintiff if no injunction is issued against the hardship to the defendants if the requested injunction is ordered. *Id.* In addition, the court must consider the effect of the proposed injunction on the public interest. *Id.*

As the Court of Appeals for the First Circuit has said on a number of occasions, the likelihood of success on the merits is of primary importance. *Id.* at 16 (citing cases). It is the *sine qua non* for obtaining a preliminary injunction. *Gately v. Commonwealth of Mass.*, 2 F.3d 1221, 1225 (1st Cir.1993); *Weaver v. Henderson*, 984 F.2d 11, 12 (1st Cir. 1993). If a great showing of likely success on the merits is made by a plaintiff, a reduced showing of irreparable harm may be appropriate. *Ross–Simons*, 102 F.3d at 19; *Astra*, 94 F.3d at 743.

In addition, a preliminary injunction is an equitable remedy. *Hecht Co. v. Bowles*, 321 U.S. 321, 329, 64 S.Ct. 587, 88 L.Ed. 754 (1944); *see also Weinberger v. Romero–Barcelo*, 456 U.S. 305, 311, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982). It does not issue automatically even if the foregoing criteria indicate that an injunction is warranted. *Converse Constr. Co. v. Massachusetts Bay Transp. Auth.*, 899 F.Supp. 753, 760 (D.Mass.1995). Thus, a court may properly consider any inequitable conduct by the plaintiff. The court may also consider any adverse impact on the public

interest for which a bond cannot compensate and withhold relief for this reason alone. *Weinberger,* 456 U.S. at 312–13, 102 S.Ct. 1798, 72 L.Ed.2d 91; *Converse,* 899 F.Supp. at 760.

Fed.R.Civ.P. 65(c) requires a prevailing plaintiff to post a bond to pay for costs and damages that may be suffered by defendants if the defendants later prevail on the merits of the case. *Cablevision v. Pub. Improvement Comm'n,* 38 F.Supp.2d 46, 53 (D.Mass. 1999).

For the reasons explained below, Hannon has not satisfied his burden of proving likelihood of success on the merits. Although Massachusetts shares with Pennsylvania the duty to provide Hannon with access to the courts, it appears that the defendant will be able to prove that Pennsylvania is doing so.

"It is undisputed that inmates have a fundamental constitutional right of access to the courts." *Carter v. Fair,* 786 F.2d 433, 435 (1st Cir.1986). There are several alternate, constitutionally acceptable methods to assure meaningful access to the courts. *See Bounds v. Smith,* 430 U.S. 817, 830, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Carter,* 786 F.2d at 435. Two customary methods are providing prisoners with access to law libraries or access to legal assistance. A prison need not provide both; either one can be sufficient. *See Blake v. Berman,* 877 F.2d 145, 146 (1st Cir.1989).

However, there is no "abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey,* 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). As with any case or controversy heard by an Article III court, there must be actual injury to the plaintiff. *See id.* at 349, 116 S.Ct. 2174. "[A]n inmate cannot establish relevant actual injury by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Id.* at 351, 116 S.Ct. 2174. Thus, in order to establish standing, an indispensable part of the plaintiff's case, Hannon must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." *Id.* at 352–58, 116 S.Ct. 2174. Furthermore, "the injury requirement is not satisfied by just any type of frustrated legal claim." *Id.* at 354–55, 116 S.Ct. 2174. Rather, the Constitution demands only that prisons provide inmates with the tools they "need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id.* at 355 n. 5, 116 S.Ct. 2174. "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* "While undoubtedly prisoners alleging a lack of judicial access must make a prima facie showing, the ultimate burden of proving that the avenues of research and/or legal or paralegal aid are adequate rests with the state." *Rich v. Zitnay,* 644 F.2d 41, 43 (1st Cir.1981).

 Allen makes two arguments as to why Hannon has not demonstrated a likelihood of success on the merits. First, Allen argues that the Pennsylvania DOC is responsible for providing Hannon with access to the courts and the Massachusetts prison system bears no responsibility for this aspect of Hannon's confinement. *See* Def.'s Opp. at 6–7. Second, Allen argues that Hannon's right to access to the courts is assured by his appointed counsel. *See* Def.'s Opp. at 3–5.

Although the First Circuit has only addressed this issue in dicta, this court finds that Hannon is likely to succeed in establishing that Massachusetts has a responsibility to provide him with access to the courts while he is incarcerated here. The

responsibility is shared between the "sending" jurisdiction which transfers a prisoner out of state and the "receiving" jurisdiction in which the prisoner is actually incarcerated. *See Rich v. Zitnay,* 644 F.2d 41, 43 n. 1 (1st Cir.1981) (dicta).

*Rich* appears to be the first case to address the question of who is responsible for a prisoner's access to the courts when that prisoner is transferred to another jurisdiction for incarceration. *See id.* at 42. In *Rich,* the plaintiffs were convicted in Maine state courts and transferred to the federal prison at Leavenworth, Kansas because they were considered security risks. *Id.* at 41. The plaintiffs sued Maine correction officials, alleging that they "were not providing sufficient legal research materials." *Id.* The district court dismissed the case. The First Circuit vacated and remanded. On appeal, the Maine officials argued that "the transferred prisoners are now within the care and custody of Leavenworth authorities and it is to these officials that plaintiffs should look for relief." *Id.* at 42 (citation omitted). The First Circuit wrote:

> The argument is superficially attractive. If plaintiffs' complaint were an unconstitutional lack of necessities such as food or heat it appears that they should ordinarily sue their present custodians for relief. In such a case the federal district court in Kansas rather than in Maine would be better equipped to assess the situation and order complete relief. The Leavenworth prison officials, as the prisoners' immediate custodians, would also be the proper parties for remedying the wrong. The same reasoning initially appears applicable with respect to adequate library and other legal research facilities. However, the one case we have found with facts comparable to those of the present appeal seems to have assumed without question that the sending authorities

(here the Maine appellees) retain responsibility for the research and legal assistance accouterments of prisoners. *See Hohman v. Hogan,* 458 F.Supp. 669 (D.Vt.1978); *cf. Beshaw v. Fenton,* 635 F.2d 239, 241 n. 2 (3d Cir.1980) (citing cases) (question of who has custody of transferred prisoner in habeas corpus case is ambiguous); *Battista v. Kenton,* 312 F.2d 167, 168 n. 1 (2d Cir.1963) (state prisoner transferred to federal custody remains state prisoner for habeas corpus purposes); *Hoitt v. Vitek,* 361 F.Supp. 1238, 1248–49 (D.N.H.1973), *aff'd.,* 495 F.2d 219 (1st Cir.1974). The assumption that sending state officials retain responsibility stems perhaps from the fact that "(t)he fundament underlying the right of access to legal materials is the right of access to the courts. This is the lodestar that guides our course." *Cruz v. Hauck,* 515 F.2d 322, 331 (5th Cir.1975), *cert. denied,* 424 U.S. 917, 96 S.Ct. 1118, 47 L.Ed.2d 322 (1976), *citing Souza v. Travisono,* 498 F.2d 1120, 1123 n. 6 (1st Cir.1974). Here it is the Maine state courts to which appellants seek meaningful access. A federal court, in fashioning relief to insure such access, might necessarily have to call on Maine rather than Leavenworth authorities to supply professionals trained in Maine criminal law. Or the most ready sources of pertinent legal research materials may be found only in Maine. In view of the likelihood that Maine officials will necessarily have to play a role in the remedy and because of the fundamental nature of the right involved, we think that Maine authorities may not wash their hands of their obligation to insure access to Maine courts simply by transferring a prisoner out of state; *See Inmates of Suffolk County Jail v. Eisenstadt,* 494 F.2d 1196, 1198–99 (1st Cir.), *cert. denied,* 419 U.S. 977, 95 S.Ct. 239,

42 L.Ed.2d 189 (1974); 34 M.R.S.A. s 707 (transferred prisoner retains "his right to legal process in the courts of this State"). They are therefore properly defendants. *Id.* at 42–43. However, in a footnote, the First Circuit stated in dicta that the federal officials at Leavenworth would be proper defendants in a court of appropriate jurisdiction because "[r]eceiving as well as sending officials share responsibility for assuring prisoners' access to the courts." *Id.* at 43 n. 1; *see also Clayton v. Tansy,* 26 F.3d 980, 982 (10th Cir.1993) (describing *Rich* footnote as dicta).

Allen cites cases from the Ninth and Tenth Circuits to support the proposition that only sending states are responsible for a prisoner's access to the courts. However, these cases are not persuasive. The Ninth Circuit provided no analysis, stating simply "[w]e agree with the Tenth Circuit." *Boyd v. Wood,* 52 F.3d 820, 820–21 (9th Cir.1995) (citing *Clayton v. Tansy,* 26 F.3d 980 (10th Cir.1993)). The Tenth Circuit cited only a single decision from the Eastern District of Wisconsin as describing the "current consensus" that sending states alone are responsible for access to the courts and distinguishing the dicta in *Rich* because the First Circuit "was dealing with a state prisoner transferred to federal prison." *Clayton v. Tansy,* 26 F.3d 980, 982 (10th Cir.1993) (citing *Hudson v. Israel,* 594 F.Supp. 664, 667–68 (E.D.Wis.1984)). To this court, that distinction does not justify finding a substantive difference in the legal responsibilities of the accepting jurisdiction.

Furthermore, the district court decision cited by the Tenth Circuit hardly represents a consensus view. In fact, the district court in *Hudson* cites only two cases for the "general rule" imposing responsibility on the sending authorities: *Rich* and a District of Vermont case cited in *Rich.*

*See Hudson,* 594 F.Supp. at 667–68. Thus, following the cited precedent from the Ninth and Tenth Circuits leads full circle to the First Circuit's opinion in *Rich* which, in light of footnote one, cannot be read to stand for the proposition that sending authorities bear sole responsibility for assuring an inmate access to the courts.

It is more appropriate to recognize a shared responsibility for assuring inmate access to the courts. As the First Circuit noted in *Rich,* prisoners ordinarily sue their present custodians for relief from unconstitutional conditions of confinement. Access to the courts involves more than whether a prison law library's collection is adequate. Other factors such as the availability of legal assistance programs, prison policies regarding free stamps for the mailing of pleadings, the availability of photocopiers, typewriters, and other equipment, as well as library hours are important in determining whether a prisoner's constitutional rights are being violated. "[M]eaningful access to the courts is the touchstone." *Lewis,* 518 U.S. at 351, 116 S.Ct. 2174 (quoting *Bounds,* 430 U.S. at 823, 97 S.Ct. 1491).

Allen also cites *Story v. Morgan,* 786 F.Supp. 523, 526 n. 3 (W.D.Pa.1992) to support his position. This case cites three other cases which hold that the receiving jurisdiction does not have responsibility for providing a prisoner with access to legal materials. *Benjamin v. Potter,* 635 F.Supp. 243 (D.Vi.1986), *aff'd mem.,* 838 F.2d 1205 (3d Cir.1988); *Brown v. Smith,* 580 F.Supp. 1576 (M.D.Pa.1984); *Kivela v. United States Att'y Gen.,* 523 F.Supp. 1321 (S.D.N.Y.1981), *aff'd mem.,* 688 F.2d 815 (2d Cir.1982). *Story, Brown* and *Kivela* raise perhaps the most compelling argument against placing the burden of shared responsibility for access to the courts on a receiving state: the fact that it may not be feasible for a state to maintain prison li-

braries that provide adequate collections for, potentially, all fifty states.

■ However, the assumption that adopting Hannon's position would require that prison authorities provide inmates with a collection of legal materials for all fifty states is incorrect. There is no constitutional right to a law library. *Lewis,* 518 U.S. at 351, 116 S.Ct. 2174. If it is less expensive and more efficient to provide out-of-state prisoners with legal assistance rather than legal materials, prison authorities are free to meet their responsibilities in this fashion.

The Interstate Correction Compact contemplates that states may, by contract, appropriately allocate the financial burdens for the care of inmates between the sending and receiving jurisdictions. *See* M.G.L. ch. 125 App. § 2–1(a)(5). Consequently, if Massachusetts authorities are not in the best position to provide Hannon with access to the Pennsylvania courts, they are free to contract with Pennsylvania to assure that Pennsylvania provides Hannon with the resources necessary to assure his constitutionally guaranteed access to the courts. Massachusetts authorities are not, however, entitled to disclaim any responsibility to a prisoner confined in their custody based on a contract to which the prisoner was not a party. In essence, this court agrees with the dicta in *Rich,* 644 F.2d at 43 n. 1, and finds that "[r]eceiving as well as sending officials share responsibility for assuring prisoners' access to the courts." *Id.*

■ Although Allen has an obligation to assure Hannon's right to access to the courts while Hannon is in his care, Hannon has not demonstrated a reasonable likelihood of proving in this case that the combination of Allen's policies, procedures and library facilities is causing him actual injury. As explained earlier, access to Pennsylvania legal materials is not required provided that Hannon has legal assistance for any nonfrivolous claim attacking his sentence, directly or collaterally, or challenging the conditions of his confinement. *See Lewis,* 518 U.S. at 355 n. 5, 116 S.Ct. 2174. Based on the correspondence attached to the Defendant's Opposition, it appears that the prison official in Pennsylvania responsible for the Interstate Corrections Compact is making an effort to comply with her state's obligations under *Lewis* and *Bounds* by determining if Hannon is without representation in any case for which he has a right of access to the courts. The correspondence indicates that Hannon has a court appointed attorney for his petition for post-conviction relief and at least one other case. On the current record, there appears to be no reason that this attorney cannot assist Hannon in his efforts to reclaim his lost legal files. If those files are important to Hannon's efforts to challenge his conviction, it appears that his attorney has every incentive to assist in their recovery, if possible.[1]

Hannon alleges in his affidavit that his current Pennsylvania attorney has "given up on the matter" and that he is effectively without counsel in his petition for post-conviction relief. *See* Hannon Aff. ¶ 1. However, Hannon's conclusory assertion that his attorney's representation is so inadequate as to rise to a constitutional violation of his right to access to the courts is insufficient to establish that he is ultimately likely to prove this contention. This court has not yet been provided a basis to

1. If the files cannot be recovered and Hannon seeks only monetary damages for their loss, then his legal claim is not the sort for which there is a constitutional right to access to the courts as it is not one that challenges his sentence or conditions of confinement. *See Lewis,* 518 U.S. at 355 n. 5, 116 S.Ct. 2174.

evaluate his attorney's performance or the procedures under Pennsylvania law to ensure adequate representation. The court assumes, without finding, however, that there is a procedure by which Hannon can request new counsel be appointed if his current counsel is not representing him effectively.

Hannon has also not proven that there is an imminent threat of irreparable harm if a preliminary injunction is not issued. Even the temporary loss of a constitutional right may be a form of irreparable harm. *See Public Service Co. v. Town of W. Newbury*, 835 F.2d 380, 382 (1st Cir.1987). However, as explained in this Memorandum, Hannon has not shown that he is likely to prove that his constitutional right to access to the courts is being violated.

Neither party has addressed the balance of the hardships or the public interest. However, since the plaintiff has not satisfied his burden on likelihood of success on the merits, the other three factors are not determinative. *See Gately*, 2 F.3d at 1225; *Weaver*, 984 F.2d at 12.

## IV. ORDER

For the foregoing reasons, Hannons' Motion for Preliminary Injunction (Docket No. 7) is hereby DENIED.

Counsel for Hannon suggests in his letter of October 17, 2002 that, depending on the court's decision on this motion, the plaintiff may want to dismiss this case and pursue relief in a new case in a federal or state court in Pennsylvania. However, since the court agrees with Hannon regarding the shared responsibility of Massachusetts and Pennsylvania to provide him with adequate access to the courts, he may still want to pursue this case. Accordingly, the plaintiff shall, by February 5, 2003, inform the defendant and the court if he intends to pursue this case. If he does, a scheduling conference pursuant to Federal Rule of Civil Procedure 16(b) will be held on February 20, 2003, at 2:30 p.m. The parties shall comply with the attached Order concerning that conference.